***Carolyn Delorise Patton v. Wells Fargo Financial Maryland, Inc.***
No. 3, September Term 2013


**Credit Grantor Closed End Credit Law – Statute of Limitations – Statutory Interpretation.**   A claim by a consumer borrower against a lender – or the assignee of a lender – for violation of the Credit Grantor Closed End Credit Law ("CLEC"), Maryland Code, Commercial Law Article ("CL"), §12-1001 *et seq.,* in its efforts to collect the loan may not be brought more than six months after the loan has been satisfied, pursuant to CL §12-1019.


**Credit Grantor Closed End Credit Law – Assignment – Contractual Duties of Assignee.** When a lender loans money to a consumer borrower, elects to have the loan contract governed by CLEC, and assigns the loan contract to a third party, the assignee of the loan contract must comply with the provisions of CLEC when enforcing its rights under that contract and is subject to a claim for breach of contract if it fails to do so.

Circuit Court for Anne Arundel County
Case No. C-10-149844
Argued: September 9, 2013

IN THE COURT OF APPEALS
OF MARYLAND

No. 3

September Term, 2013

CAROLYN DELORISE PATTON

v.

WELLS FARGO FINANCIAL MARYLAND, INC.

Barbera, C.J.
Harrell
Battaglia
Adkins
McDonald
Watts
Cathell (Retired, Specially
Assigned),

JJ.

Opinion by McDonald, J.

Filed: February 24, 2014

This case concerns a loan contract by which a consumer financed the purchase of an automobile over time. The car dealer assigned the contract to a financial services company. Before the loan was paid off, the consumer stopped making payments. As a result, the assignee of the loan contract repossessed and sold the automobile to recover some of the money owed under the contract. The consumer brought suit, alleging that the repossession and sale of the car did not comply with the Credit Grantor Closed End Credit Law ("CLEC"), a Maryland statute that governed the loan contract. The Circuit Court dismissed the lawsuit, apparently finding that the consumer's statutory claims were untimely by applying a one-year statute of limitations from the Maryland Equal Credit Opportunity Act. The Circuit Court also dismissed a related contract claim apparently on the ground that the requirements of CLEC were not incorporated into the contract as to the assignee.

We hold that the appropriate statute of limitations for an action alleging a violation of CLEC can be found in CLEC itself – in particular, such an action may not be brought more than six months after the loan is satisfied. We also hold that the loan contract in this case adequately incorporated CLEC as part of the contractual obligations, that the assignee voluntarily accepted that provision in taking the assignment, and that a contract claim may be asserted against the assignee. Accordingly, we reverse.

## I. Background

### A.    *Closed End Credit*

As a general rule, "closed end credit" denotes a loan or extension of credit in which the borrower receives the benefit of the proceeds of the loan immediately and repays the

principal, together with interest and other charges, in the future, usually in installments.[1]

Closed end credit is sometimes contrasted to revolving – or "open end" – credit arrangements, like credit cards, in which the borrower is able to use credit to buy goods or secure loans on a continuing basis so long as the outstanding balance does not exceed a specified limit.[2]  *See* Maryland Code, Commercial Law Article ("CL"), §12-1001(d) (defining "closed end credit" as "the extension of credit by a credit grantor to a borrower under an arrangement or agreement which is not a revolving credit plan...").  A major category of closed end credit involves loans to individuals to finance the purchase of motor vehicles.[3]

In Maryland, when the purchase of a motor vehicle is financed by an installment sale, the lender may elect for the contract to be governed by either of two statutes found in Title 12 of the Commercial Law Article of the Maryland Code:  the Credit Grantor Closed End Credit Law, Maryland Code, Commercial Law Article, §12-1001 *et seq.* ("CLEC"), or the Maryland Retail Installment Sales Act, Maryland Code, Commercial Law Article, §12-601 *et seq.* ("RISA").  If the lender elects CLEC, it is to do so by written election in the loan

---

[1]*See* American Bar Association, Guide to Credit and Bankruptcy 16 (2d ed. 2012); BusinessDictionary.com, "Closed End Credit" http://www.BusinessDictionary.com/definition/closed-end-credit.html (last visited February 16, 2014).

[2]*See* Black's Law Dictionary (9th ed. 2009) at 424 ("revolving credit").

[3]In 2013, more than $800,000,000,000 in motor vehicle loans was outstanding in the United States.  Board of Governors of the Federal Reserve System, *Consumer Credit - G.19*, *Consumer Credit Outstanding (Levels) (billions of dollars) Not seasonally adjusted* (Nov. 21, 2013, 1:45 PM), http://www.federalreserve.gov/releases/g19/current/default. htm#fn1a.

contract. CL §12-1013.1(a)(2); *see also Ford Motor Credit Co. v. Roberson,* 420 Md. 649,

658 n.8, 25 A.3d 110 (2011). This case concerns a loan contract governed by CLEC.

## B.    CLEC

CLEC provides certain protections to consumer borrowers[4] in transactions involving

closed end credit. Among other things, CLEC sets limits on the rate of interest, as well as

other fees, that may be charged by a lender – referred to as a "credit grantor" in the statute.[5]

*See* CL §§12-1003, 12-1005. The statute confers on a consumer borrower the right to prepay

the loan in full at any time without penalty. CL §12-1009. If a consumer borrower is in

_____

[4]The statute defines "consumer borrower" as "an individual receiving a loan or other extension of credit ... for personal, household, or family purposes, or an individual receiving a commercial loan or other extension of credit for any commercial purpose not in excess of $75,000, secured by residential real property." CL §12-1001(f).

[5]The statute defines "credit grantor" in pertinent part as follows:

> (1)  "Credit grantor" means any individual, ... or any other legal or commercial entity making a loan or extension of credit under [CLEC] which is incorporated, chartered or licensed pursuant to State or federal law ....

> (2)  "Credit grantor" includes:
>         (i)  Any bank, trust company, depository institution, or savings bank having a branch in this State;

> ....

>         (iii) Any person who acquires or obtains the assignment of an agreement for an extension of credit made under [CLEC].

CL §12-1001(g).

default on a loan, the credit grantor may repossess the collateral for the loan, but must follow certain procedures in doing so. CL §12-1021. In particular, once the lender has taken possession of the collateral, it must advise the borrower of the borrower's right to redeem the property, the location of the property, the rights of the borrower with respect to resale of the property, and the borrower's potential liability for a deficiency. CL §12-1021(e). The lender may charge the borrower the "actual and reasonable expenses of retaking and storing the property" only if the lender provides the borrower with advance notice of the repossession. CL §12-1021(c), (h)(3). The statute allows the creditor to sell the collateral at private sale or public sale. CL §12-1021(j). In the case of a private sale, it requires the lender to provide an accounting to the borrower, including specified information. CL §12-1021(j)(2); *see also Gardner v. Ally Financial, Inc.*, 430 Md. 515, 523-33, 61 A.3d 817 (2013). The statute also contains other authorizations and protections not pertinent to this case.

The statute provides various remedies to a borrower if the lender fails to comply with CLEC. For example, in some circumstances, the lender may be limited to collecting the principal of the loan and prohibited from collecting interest and other charges. CL §12-1018(a)(2). A knowing violation of the statute may result in the lender forfeiting three times the amount of any interest, fees, and charges in excess of those allowed by CLEC. CL §12-1018(b). The statute provides that, if a lender fails to observe various requirements concerning repossession and notice, the lender is not entitled to a deficiency judgment for the unpaid balance of the loan. CL §12-1021(k)(4). The statute also confers certain

4

administrative regulatory powers on the Commissioner of Financial Regulation and provides a criminal penalty for willful violations of the statute.  CL §12-1015 through §12-1018.1.

The statute specifies that the phrase "credit grantor" includes an assignee.  CL §12-1001(g)(2)(iii).  Thus, an entity that receives an assignment of a loan contract governed by CLEC from the originator of the loan is also subject to the requirements of CLEC.

## C.  *Ms. Patton Finances the Purchase of a New Car*

The complaint, including attachments, that initiated this case in the Circuit Court alleged the following facts:

In 2005, Appellant Carolyn Delorise Patton purchased a new Chevrolet Malibu from Fox Chevrolet, Inc. ("Fox Chevrolet"), a car dealership located in Maryland.  Ms. Patton entered into a retail installment sales contract with Fox Chevrolet to finance the purchase. The contract was set forth on a standard form that contained the terms of the contract and blanks for the names of the parties and various monetary amounts specific to the transaction. Under that contract, Ms. Patton agreed to make monthly payments, covering principal in the amount of $22,095.74 and interest in the amount of $14,098.66 (calculated at a rate of 17.9%), over a six-year period.  In addition, Ms. Patton gave Fox Chevrolet a security interest in the car to secure payment of the amount owed. The contract also recited various consequences if Ms. Patton failed to make the scheduled payments, including repossession of the car by the lender, acceleration of the obligation to pay the principal, and assessment of collection costs.

In a section entitled "Applicable Law," the contract form stated that "Federal law and Maryland law and specifically Subtitle 10 of Title 12 of the Commercial Article of the Maryland Code apply to this Contract." As noted above, subtitle 10 of Title 12 of the Commercial Law Article is the formal designation of CLEC.

The bottom of the contract form contained a space for assignment of the contract by the seller. The form also contained a notice in boldface print that stated that "Any holder of this consumer credit contract is subject to all claims and defenses which the debtor could assert against the seller of goods or services obtained pursuant hereto or with the proceeds hereof. Recovery hereunder by the debtor shall not exceed amounts paid by the debtor hereunder."[6]

After the sale of the car to Ms. Patton, Fox Chevrolet assigned the loan contract to Appellee Wells Fargo Financial Maryland, Inc. ("Wells Fargo Financial").

### D. Ms. Patton Fails to Make Payments; Repossession and Sale of the Car

In 2007, Ms. Patton stopped making the monthly payments required by the contract. In November 2007, Wells Fargo Financial repossessed the car. It immediately notified her of the repossession and of the date that the car would be sold at a private sale if she did not

---

[6]The contract form further explained that this notice "applies only if the 'personal, family, or household' box in the 'Primary Use for Which Purchase' section of this contract is checked. In all other cases, Buyer will not assert against any subsequent holder or assignee of this contract any claims or defenses the Buyer (debtor) may have against the Seller, or against the manufacturer of the vehicle or equipment obtained under this contract." The "personal, family or household" box on Ms. Patton's contract form is checked.

6

make the payments necessary to redeem it. Ms. Patton did not make the required payment and Wells Fargo Financial proceeded with the sale. In January 2008, it informed Ms. Patton of the sale and also noted that she still owed a deficiency of $13,227.28.

## E.  Ms. Patton's Lawsuit

On March 5, 2010, more than two years after she had been notified that Wells Fargo Financial had sold the car at a private sale, Ms. Patton sued Wells Fargo Financial[7] in the Circuit Court for Anne Arundel County, alleging various violations of CLEC in connection with the repossession and sale of the car.[8] Her complaint had seven counts:[9]

The first three counts alleged specific violations of CLEC – in particular, of CL §12-1021 – in the repossession and sale of the car. The first count alleged that, after Wells Fargo Financial repossessed the car, it did not provide her with a written notice stating "the rights of the consumer borrower to redeem the vehicle, and the amount payable by it; the rights of the consumer borrower as to a resale, and his liability for a deficiency; and the exact location where the vehicle is stored and the address where any payment is to be made," as required

---

[7] Ms. Patton initially named Wells Fargo Bank, N.A. as the defendant. She later amended the complaint to replace "Wells Fargo Bank, N.A." with "Wells Fargo Financial Maryland, Inc."

[8] Ms. Patton sought to prosecute her complaint as a class action pursuant to Maryland Rule 2-231 and requested that a class be certified. That issue is not before the Court.

[9] Some of the counts of the complaint were mislabeled – *i.e.*, there was no count labeled "IV" and there were two counts labeled "VII." For ease of reference, we refer to the counts by their sequential order rather than by their label.

by CL §12-1021(e), and instead only sent a notice stating the location where the car was being stored.

The second count alleged that Wells Fargo Financial had violated CLEC by charging Ms. Patton for the cost of repossessing her car because it had not provided her with an advance notice of the repossession, contrary to CL §12-1021(c) & (h)(3).

The third count alleged that Wells Fargo Financial had failed to provide Ms. Patton with a "full accounting" after it disposed of her vehicle at a private sale, including "the purchaser's name, address, and business address; the number of bids received; and any statement as to the condition of the vehicle at the time of repossession," in violation of CL §12-1021(j)(2).

The fourth count alleged that the provisions of CLEC had "become a part of the [loan] contract just as if the parties expressly included the CLEC provisions in their credit contracts" and that, as a result of the violations of CLEC identified in the first three counts, Wells Fargo Financial was liable for breach of contract.

The fifth count was brought under the Declaratory Judgments Act[10] and sought a declaration that Wells Fargo Financial was precluded from seeking a deficiency judgment against Ms. Patton as a result of the alleged CLEC violations.

---

[10]Maryland Code, Courts & Judicial Proceedings Article, §3-401 *et seq.*

8

The sixth count asserted that Wells Fargo Financial had been unjustly enriched as a result of its CLEC violations and sought restitution of any funds paid toward the deficiency balance, interest, fees, and other costs claimed by Wells Fargo Financial.

The seventh count alleged that Wells Fargo Financial's failure to comply with CLEC and its assertion that Ms. Patton owed a deficiency balance constituted unfair and deceptive trade practices, in violation of the Consumer Protection Act.[11]

## F.   *Dismissal of Complaint and Appeal*

Wells Fargo Financial moved to dismiss Ms. Patton's complaint. After a hearing on the motion, the Circuit Court entered an order dated October 8, 2010, dismissing all counts of the complaint. The court dismissed four counts – the first three counts alleging violations of CLEC and the fourth count alleging breach of contract – with prejudice, but gave Ms. Patton leave to amend the three remaining counts of the complaint. Although the court did not issue a written opinion, it appears that the court agreed with Wells Fargo Financial that the CLEC claims were untimely and that Ms. Patton's complaint did not state a cause of action for breach of contract.

Ms. Patton filed a notice of appeal. The Court of Special Appeals dismissed Ms. Patton's appeal without prejudice, on the ground that Circuit Court's judgment was not a final, appealable order. Wells Fargo Financial then moved in the Circuit Court for dismissal of the remaining counts of the complaint with prejudice, on the ground that Ms. Patton had

___

[11]Maryland Code, Commercial Law Article, §13-101 *et seq.*

9

failed to amend those claims within the requisite period of time – a motion that Ms. Patton did not oppose so that a final judgment could be entered. The Circuit Court complied on March 30, 2012, and Ms. Patton refiled her notice of appeal. On December 14, 2012, prior to a hearing or decision by the Court of Special Appeals, we issued a writ of *certiorari* on our own initiative.

## II. Discussion

In her appeal, Ms. Patton contests the Circuit Court's rulings on the timeliness of her claims under CLEC and the adequacy of her breach of contract claim. We consider first the appropriate statute of limitations for a claim brought by a consumer borrower against a credit grantor for violation of CLEC to determine whether Ms. Patton's claims alleging violations of CLEC were timely. We next consider whether the requirements of CLEC become part of the contractual obligations incorporated in a contract regulated by CLEC, such that a violation of CLEC also constitutes a breach of contract.

## A.     *Standard of Review*

In deciding a motion to dismiss a complaint, a circuit court assumes the truth of the complaint's factual allegations, and any reasonable inferences, in the light most favorable to the plaintiff. *Bobo v. State*, 346 Md. 706, 708, 697 A.2d 1371 (1997). In reviewing the dismissal of a complaint, an appellate court applies the same standard and assesses whether that decision was legally correct. *See Reichs Ford Rd. Joint Venture v. State Roads Comm'n*, 388 Md. 500, 509, 880 A.2d 307, 312 (2005) (citing *Adamson v. Corr. Med. Servs.*, 359 Md.

10

238, 246, 753 A.2d 501 (2000)). The appellate court accords no special deference to the circuit court's legal conclusions.

## B. *Statute of Limitations for Violation of CLEC*

More than two years elapsed between the repossession and sale of Ms. Patton's car and the filing of the complaint that initiated this case. Wells Fargo Financial argues that CL §12-707(g), a section of the Maryland Equal Credit Opportunity Act that states a one-year period of limitations, is the appropriate statute of limitations for actions brought under provisions of the Commercial Law Article, including CLEC. By contrast, Ms. Patton points to CL §12-1019, a section of CLEC that states that "[a]n action for violation of this subtitle" – *i.e.,* CLEC – "may not be brought more than 6 months after the loan is satisfied." Unsurprisingly perhaps, under Wells Fargo Financial's theory, Ms. Patton's claims under CLEC are time-barred; under Ms. Patton's theory, they are timely. We discuss each party's suggested statute of limitations in turn.

### 1. CL §12-707(g)

Wells Fargo Financial urges us to apply the following limitations provision:

> An action under **this title** may be brought in any district court or circuit court, depending upon the amount in controversy, within one year from the date of the occurrence of the violation.

CL §12-707(g) (emphasis added). This provision appears in the Maryland Equal Credit Opportunity Act, Maryland Code, Commercial Law Article, §12-701 *et seq.*, which comprises subtitle 7 of Title 12 of the Commercial Law Article, a statute that is quite distinct

11

from CLEC and the other eleven subtitles of Title 12. That statute, patterned after an analogous federal law,[12] prohibits discrimination on the basis of sex, marital status, race, color, religion, national origin, or age in the *extension of credit*. It does not regulate the substantive terms of an installment sale, the repossession and sale of collateral when a borrower defaults, or the conditions under which a lender can seek a deficiency judgment against the borrower. There is no allegation in this case that Wells Fargo Financial violated the Maryland Equal Credit Opportunity Act.

Nevertheless, according to Wells Fargo Financial, the plain language of this provision means that it states the period of limitations for any action that could be brought for violation of "this title" – *i.e.*, Title 12 of the Commercial Law Article. Wells Fargo Financial is correct that, as a literal matter, the language of CL §12-707(g) would appear to apply to *all* of the statutory schemes contained in Title 12, even those, like CLEC, contained in other subtitles. But the "plain meaning" of a statute can only be assessed in the context in which it appears. *Building Materials Corp. v. Board of Education of Baltimore County*, 428 Md. 572, 585, 53 A.3d 347 (2012). In that regard, it is notable that other subtitles of Title 12, including CLEC, contain various other statutes of limitations.[13] Neither CL §12-707(g) nor these other statutes

---

[12] 15 U.S.C. §1691 *et seq.*

[13] For example, CL §12-919 (in the subtitle concerning Revolving Credit Provisions) provides that "[a]n action for violation of this subtitle may not be brought more than 6 months after the credit extension is repaid in full," and CL §12-111 (in the subtitle concerning usury and interest) provides that "[a]n action for usury under this subtitle may not be brought more than six months after the loan is satisfied."

acknowledge each other. Considered in that light, the purview of CL §12-707(g) is ambiguous.

*Resolution of Ambiguity in Statues*

"[W]here a statute is plainly susceptible [to] more than one meaning and thus contains an ambiguity, courts consider not only the literal or usual meaning of the words, but their meaning and effect in light of the setting, the objectives and purpose of the enactment." *Kaczorowski v. Mayor & City Council of Baltimore*, 309 Md. 505, 513, 525 A.2d 628 (1987) (internal citations omitted). Where, as here, there appears to be ambiguity or "uncertain meaning" in a statute, the Court "may and often must consider other 'external manifestations' or 'persuasive evidence,' including a bill's title and function paragraphs,...its relationship to earlier and subsequent legislation, and other material that fairly bears on the fundamental issue of legislative purpose or goal...." 309 Md. at 515. Courts are not limited "to the words of the statute as they are printed in the Annotated Code." *Id*. at 514-15. In fact, as this Court noted in *Kaczorowski,* "[t]he circumstances of the enactment of particular legislation may persuade a court that [the legislature] did not intend words of common meaning to have this literal effect." *Id*. at 514 (internal citations omitted). This process allows courts to discern "that construction which avoids an illogical or unreasonable result, or one which is inconsistent with common sense." *Id.* (internal citation omitted).

In *Kaczorowski* itself, the Court considered whether a local development agency, which owed its existence to a particular statute, had inadvertently become defunct because

13

the General Assembly, in the course of a legislative effort to enhance the financing capabilities of such agencies, had repealed certain parts of the agency's enabling act and a "savings clause by its plain wording [did] not save it." 309 Md. at 511. The Court concluded that the General Assembly had made a "patent drafting error" that frustrated the legislative goal of the statute and that the courts should not give effect to it. *Id.* at 520.

Accordingly, we review the legislative history of CL §12-707(g) to resolve the ambiguity of its application.

*Legislative History of CL §12-707(g)*

In 1975, one year after the passage of the similar federal law,[14] the General Assembly passed the Maryland Equal Credit Opportunity Act, Chapter 753, Laws of Maryland 1975 *codified at* CL §12-701 *et seq.* (1975 & 1975 Supp.), finding that "there is a need to insure that the various financial institutions and other persons and firms engaged in the extension of credit exercise their responsibility to make credit available with fairness, impartiality, and without discrimination on the basis of sex or marital status...." CL §12-702(a). The stated purpose of the new subtitle 7 of Title 12 of the Commercial Law Article was "to require that financial institutions and other persons and firms engaged in the extension of credit do not deny credit solely on the basis of sex or marital status." CL §12-702(b).[15]

---

[14]*See* Equal Credit Opportunity Act, Pub.L. No. 93-495, §701, 88 Stat. 1521 (1974).

[15]The Maryland Equal Credit Opportunity Act was amended in 1989 to extend its anti-discrimination provisions to prohibit discrimination on the basis of "race, color, religion, national origin, or age." The purpose provision of CL §12-702(b) was similarly amended. *See* Chapter 648, Laws of Maryland 1989.

14

Although it contained a section describing a creditor's civil liability for violating the statute, *see* CL §12-707 (1975 Supp.), the original version of the Maryland Equal Credit Opportunity Act did not contain a specific statute of limitations for actions under that provision. In 1976, the General Assembly amended the Act to increase the potential damages that could be awarded for a violation of the Act and, at the same time, added a period of limitations for such actions. Chapter 723, Laws of Maryland 1976. The title of the bill stated that it was "For the purpose of increasing the damages for violation of the Equal Credit Opportunity Act; and *generally relating to civil liabilities for violation of the Equal Credit Opportunity Act*." House Bill 1038 (1976) (emphasis added). Notwithstanding that the title of the bill related the bill only to the Maryland Equal Credit Opportunity Act and that references to "this subtitle" (*i.e.,* the Maryland Equal Credit Opportunity Act) in the existing damages provision indicated the limited nature of the bill, the new limitations provision in the bill referred to "this title" – literally, the entire Title 12 of the Commercial Law Article.

It is clear that both the 1975 enactment of the Maryland Equal Credit Opportunity Act and its 1976 amendment were intended to ensure that creditors were prohibited from engaging in discriminatory practices when extending credit, and that consumer borrowers had a remedy if creditors did engage in such practices. It is also clear that the law was modeled on its federal analog.

Documents in the bill file for the 1976 bill that added the limitations provision indicate that the General Assembly sought to conform the Maryland statute to the provisions

15

of the civil liability section of the Federal Equal Credit Opportunity Act.[16]  In particular, the bill file for House Bill 1038 (1976) contains a copy of the civil liability section of the Federal Equal Credit Opportunity Act that had been passed in 1974, Pub. Law. 93-495 (1974) *as codified at* 15 U.S.C. §1691e(g) (1974), *now codified at* 15 U.S.C. §1691e(f) (2014).  A handwritten note in the same file reads: "Conforms to Fed Equal Credit Opor. Act."  The fact that these documents are found in the Maryland bill file is "strong evidence" of the General Assembly's intention that confirms an inference that could be drawn from the similarity of text and purpose.  *See Johnson v. Mayor & City Council of Baltimore*, 430 Md. 368, 388, 61 A.3d 33 (2013).  None of the materials in the legislative file suggest that the scope of the new limitations provision was to be broader than the statute to which it was added.

The copy of the federal legislation in the bill file also provides a clue as to how the bill came to refer to "this title" in CL §12-707(g).  As with CL §12-707(g), the limitations provision of the federal bill appears in a final subsection (g) of the liability section of the law. Notably, the federal Act uses the word "this title" to describe itself, in subsection (g) as

---

[16]The bill file for House Bill 1038 (1976) contains testimony from the Maryland Commission on the Status of Women, stating that the Commission believed "that passage of legislation which provides for increased penalties will heighten the awareness of credit granting businesses to the need for equal treatment."  Testimony of Elaine L. Newman, Executive Director, Maryland Commission the Status of Women, Testimony before Economic Matters Committee (February 27, 1976).  A representative of the Maryland affiliate of the American Civil Liberties Union testified that it is "imperative that any Maryland law, providing statutory relief with respect to a right, which is also guaranteed by Federal law, should provide remedies closely approximating those provided [by] such Federal law."  Testimony of Cynthia L. Koonce (February 27, 1976).

elsewhere. In the original 1975 iteration of the Maryland statute, CL §12-707 concerned damages and an exception from liability for a violation of the Maryland Equal Credit Opportunity Act and referenced the Act correctly as "this subtitle." In the 1976 amendment those provisions were elaborated, but the only entirely new addition to the statute was the one-year period of limitations provision in new subsection (g), evidently inspired by the identical federal limitations provision. It is apparent that the drafters of the 1976 amendment made a "patent drafting error" when they imported the federal limitations provision from subsection (g) of the federal statute into a new subsection (g) of the Maryland statute, but failed to substitute "this subtitle" for "this title" in the limitations provision, as they had done in the damages provisions of the original CL §12-707 in the 1975 legislation (and preserved in the 1976 amendments of those provisions).

Other considerations also counsel in favor of limiting the purview of CL §12-707(g) to the Maryland Equal Credit Opportunity Act. As noted above, Title 12 of the Commercial Law Article contains other statutes of limitations. If CL §12-707(g) were to be applied to the entirety of Title 12, it would sow confusion throughout Title 12 of the Commercial Law Article, particularly in those subtitles that contain statutes of limitations. The result would be not unlike placing conflicting traffic signals at an intersection. Finally, if Wells Fargo is correct that CL §12-707(g) applies universally in Title 12, a number of prior decisions concerning other subtitles of Title 12 have been wrongly decided in not taking account of CL §12-707(g). *See, e.g., Master Financial, Inc. v. Crowder*, 409 Md. 51, 972 A.2d 864 (2009)

17

(determining statute of limitations for action brought under subtitle 4 of Title 12 without discussing CL §12-707(g)).

Although the "plain meaning" of CL §12-707(g) may lead to a conclusion that it applies to the entirety of Title 12 of the Commercial Law Article, including an action for violation of CLEC, the legislative history of the Maryland Equal Credit Opportunity Act indicates otherwise. As in *Kaczorowski*, the statutory conundrum is the product of a "patent drafting error" that leads to an "absurd result." *Kaczorowski*, 309 Md. at 520. In our view, CL §12-707(g) was intended to apply solely to actions based on violations of the Maryland Equal Credit Opportunity Act and does not apply to an action for a violation of CLEC.

## 2. CL §12-1019

*Statute and Case Law*

As noted earlier, CL §12-1019 is part of CLEC and provides that "an action for violation of this subtitle may not be brought more than 6 months after the loan is satisfied." This Court, and others, have acknowledged that CL §12-1019 states the period of limitations for an action alleging a violation of CLEC. In particular, in *Master Financial v. Crowder*, 409 Md. 51, 66, 972 A.2d 864 (2009), this Court listed examples of statutes that contained a "specific period of limitations for enforcement of the statute" and identified CL §12-1019 as a limitations period "requiring that [a] civil action for violation of Credit Grantor Closed End Credit Act be filed no later than six months after loan is satisfied." In *Green v. Ford Motor Credit Co.*, 152 Md. App. 32, 53, 828 A.2d 821 (2003), the Court of Special Appeals,

18

in passing, described CL §12-1019 as setting forth a "condition precedent to suit" – an apt description for a statute of limitations.[17] *See also White v. Bank of America, N.A.*, 2012 WL 1067657, *1 at *8 (D. Md. March 27, 2012) (noting that "CLEC does have a statute of limitations, which requires that suit be brought no more than 'six months after the loan is satisfied'") (internal citation and footnote omitted).

*Bediako*

Wells Fargo Financial argues that CL §12-1019 does not state the limitations period for an action alleging a violation of CLEC, relying on a recent federal district court decision. *Bediako v. American Honda Finance Corp,*, 850 F. Supp. 2d 574 (D. Md. 2012), *aff'd on other grounds*, 537 Fed. Appx. 183 (4th Cir. 2013).[18] We have reviewed the analysis of the federal district court in *Bediako* and find it to be flawed.

---

[17]The issue in the *Green* case did not require that court to decide whether CL §12-1019, or some other statute, states the appropriate period of limitations for an action alleging a violation of CLEC. That case involved motor vehicle finance contract under CLEC. After the consumer stopped making payments, the credit grantor repossessed and sold the vehicle and ultimately obtained a judgment for the deficiency. 152 Md. App. at 36. In attempting to have the deficiency judgment set aside for fraud, mistake, or irregularity, the consumer made a series of arguments, one of which was that CL §12-1019 somehow sanctioned attacks on enrolled judgments. *Id.* at 52. Unsurprisingly, the court required only a single paragraph to find that argument meritless.

[18]It is notable that two federal district court decisions were issued virtually simultaneously, one of which (*White*) characterizes CL §12-1019 as the statute of limitations for a CLEC action and the other of which (*Bediako*) asserts that it is not. In its unreported decision affirming *Bediako*, the Fourth Circuit did not analyze the limitations issue and only briefly alluded to it in holding that there was no controversy eligible for resolution by a declaratory judgment because the credit grantor had abandoned any claim against the borrower for a deficiency. 537 Fed. Appx. at 187.

The court in *Bediako* based its analysis largely on a statement by this Court in *Scott v. Ford Motor Credit Co.*, 345 Md. 251, 254, 691 A.2d 1320 (1997) that "CLEC does not contain a statute of limitations." But, once again, context is key. *Scott* did not involve a suit alleging a violation of CLEC. Rather, it was an action brought by a lender against a borrower for a deficiency. Indeed, the Court specifically noted that the borrower "does not contend that the requirements of CLEC were not followed." 345 Md. at 255. Thus, that case did not involve "[a]n action for violation of this subtitle" (*i.e.*, CLEC) and the limitations period set forth in CL §12-1019 was not pertinent. The Court in *Scott* was correct when it determined that CLEC does not itself contain a limitations period for a deficiency action by a lender against a borrower. *Id*. at 254-55. In the absence of a statutory limitations period, this Court had to decide in *Scott* whether the four-year limitations period of the Sales Article of the Uniform Commercial Code (Title 2 of the Commercial Law Article) or the general three-year period of limitations (Courts & Judicial Proceedings Article, §5-101) was the more appropriate limitations period to apply for a deficiency action. *Id*. at 252. The Court ultimately reasoned that the four-year period of limitations in the Sales Article was the more apt period, for reasons not relevant to our case. *Id*. at 262.

The *Bediako* court also looked to adoption of the four-year period of limitations in *Scott* for a deficiency action as another basis for declining to apply CL§12-1019 for actions alleging a violation of CLEC. The *Bediako* court reasoned that it would be "absurd and outrageous" if a creditor had only four years to seek a deficiency judgment, but the borrower

20

had what the court viewed as a potentially much longer period under CL §12-1019 – "six months after the loan is satisfied" – to bring an action against the lender for violation of CLEC. 850 F.Supp.2d at 579.

In reaching the conclusion that CL §12-1019 does not state the statute of limitations for an action alleging a violation of CLEC, the *Bediako* court did not distinguish or acknowledge contrary authority.[19] After concluding that CL §12-1019 was not a statute of limitations, the court apparently felt it necessary to explain its purpose. The court characterized the provision as a "books closing device" that it analogized to use of "claims made" policies in certain lines of insurance. 850 F.Supp. 2d at 579. While the court ascribed this intent to the General Assembly, it cited nothing from the legislative record to support that attribution.[20]

In the end, after arguing that CL §12-1019 is not a statute of limitations, the *Bediako* Court ultimately treated it as a sort of concurrent period of limitations both for actions by borrowers alleging violations of CLEC and for actions by lenders under the loan contract seeking a deficiency judgment – a conclusion that appears at odds with the purpose of the

---

[19]The court did not cite *Crowder*, or the decision of another judge of the federal court in *White* (though the *White* decision was issued only the day before *Bediako*), and simply paraphrased the statement in *Green* that CL §12-1019 states a "condition precedent" to suit, without explaining why that description would disqualify it as a statute of limitations. 850 F.Supp.2d at 579 n.2.

[20]We found no mention of "book closing devices" or claims made policies, or anything similar, in our own review of the legislative record. Indeed, it appears from the materials available to us that this theory would have been quite foreign to the proponents of the amendment that created CL §12-1019. *See* text at pp. 22-25.

21

statute. 850 F.Supp.2d at 580-81. The court concluded that the period of limitations for an action brought by either a lender or a borrower with respect to a contract under CLEC is the earlier of (1) six months after the loan is satisfied or (2) four years after a violation of CLEC. *Id*. It is not entirely clear how the court arrived at a formulation that seemingly combines two very different types of actions. In particular, it is not clear why a statute that sets a deadline for bringing an action for "a violation of [CLEC]" would apply to a lender's deficiency action, which would not allege a violation of CLEC and indeed would be premised on the notion that the lender has complied with CLEC. The *Bediako* court cited nothing in the case law or the statute's legislative history to support its limitations formula. And we decline to adopt it.

*Legislative History of CL §12-1019*

A review of the legislative history of CL §12-1019 leaves no doubt that the General Assembly intended to create a statute of limitations for actions alleging violations of CLEC. CL §12-1019, together with the rest of CLEC, was enacted as a part of the Financial Economic Development Act of 1983. *See* Chapter 143, Laws of Maryland 1983. When it was introduced, the bill was viewed as primarily a deregulation effort to permit banks in Maryland to compete more effectively with banks in nearby states. *See* Senate Bill 591 (1983), (first reader); partial transcription of hearing before Senate Economic Affairs Committee (February 25, 1983) in legislative bill file for Senate Bill 591 (1983); *see*

*generally Biggus v. Ford Motor Credit Co.,* 328 Md. 188, 196-98, 613 A.2d 986 (1992) (recounting legislative history of enactment of CLEC).

The Attorney General opposed the bill in its original form, stating that "[t]he bill goes too far" in removing consumer protections and urged the Legislature to modify the bill. *See* Statement of Attorney General Stephen H. Sachs (February 25, 1983). The Attorney General and the Secretary of Licensing and Regulation urged the addition of protections for consumer borrowers, as well as penalties for lenders who violated those provisions. *See* Senate Economic Affairs Committee, Hearing Summary for Senate Bill 591 (1983); Letter of Eleanor M. Carey, Deputy Attorney General, to Delegate Frederick C. Rummage, Chairman of House Economic Matters Committee concerning Senate Bill 591 (March 28, 1983).

Consistent with the positions of the Attorney General and the administration, the Governor's Office proposed a series of amendments to the bill. Among the proposed amendments were penalty provisions for lender violations of CLEC. *See* Senate Bill 591 – Analysis of Proposed Administration Amendments (March 28, 1983) in legislative file for Senate Bill 591. While under consideration by the Legislature, that proposal was "augmented ... to include a statute of limitations similar to that found in the Maryland interest and usury law..." *Id*. at 14. The Legislature ultimately adopted the proposed amendment with the statute of limitations, which was codified as CL §12-1019.

Thus, there is no mystery as to where the Legislature obtained the language of CL §12-1019. As the bill file indicates, at the time CL §12-1019 was enacted, another statute

23

that regulated over-reaching by lenders as to consumer borrowers already contained a statute of limitations for actions brought by a borrower alleging a violation by a lender. In particular, then as now, the usury statute had a limitations provision, which reads as follows: "An action for usury under this subtitle may not be brought more than six months after the loan is satisfied." CL §12-111. Even if the bill file were not explicit, it is evident that this provision was the source for the language adopted for the CLEC statute of limitations. Both the usury statute and CLEC deal with situations where a borrower is given an opportunity to repay a loan according to agreed-upon terms.

The relationship of CL §12-1019 to the usury statute also casts light on an alternative reading of the statute urged by Wells Fargo Financial in its brief. In particular, Wells Fargo Financial argues that the statute of limitations in CL §12-1019 applies only to a cause of action that accrues *after* the loan is satisfied and therefore is not applicable to the circumstances of this case. Under this reading of the statute, an action could be filed for a violation of CLEC only in the short window between satisfaction of the loan and a date six months later. It would also mean that a borrower who was charged interest or fees in excess of those permitted by CLEC and who wished to bring an action to obtain relief under the statute from the excessive charges, *see* CL §12-1018(a)(2), would first have to pay the excessive charges to "satisfy" the loan. There is no support in the case law or legislative history for this odd interpretation of the statute. It is well-established that a cause of action

24

under the usury statute – the model for CL §12-1019 – remains available if the loan is not fully paid.  *See Brenner v. Plitt*, 182 Md. 348, 34 A. 853 (1943).[21]

*Other Canons of Statutory Construction*

Finally, even if the legislative record was not clear that CL §12-1019, not CL §12-707(g), is the appropriate period of limitations for an action alleging a violation of CLEC, other canons of statutory construction point to the same conclusion.  CL §12-707(g) was enacted in 1976.  Chapter 723, Laws of Maryland (1976).  CLEC, including the limitations period set forth in CL §12-1019, was enacted in 1983. Chapter 143, Laws of Maryland 1983. Under the standard rules of statutory construction, to the extent that there is a conflict between the two provisions, the later enacted provision – *i.e.,* CL §12-1019 – prevails. *State v. Ghajari*, 346 Md. 101, 115, 695 A.2d 143 (1997); *cf.* Maryland Code, Article 1, §17. Moreover, as a general rule, when a specific enactment and general enactment appear to cover the same subject, but conflict, the specific enactment prevails. *Smack v. Department of Health & Mental Hygiene*, 378 Md. 298, 306, 835 A.2d 1175 (2003).  Even if one reads CL §12-707(g) literally to apply to all subtitles of Title 12 of the Commercial Law Article,

---

[21] In *Brenner*, this Court traced the history of the usury statute and confirmed that a cause of action for usury remained available up to the time that the loan was satisfied.   182 Md. at 356-63.  Subsequent to that decision, the General Assembly extended the period of limitations for a usury action to six months after the loan was satisfied.  Chapter 453, Laws of Maryland 1968.  That provision was later recodified as CL §12-111 – the model that the Legislature used to draft CL §12-1019.  Chapter 49, §3, Laws of Maryland 1975.

25

CL §12-1019 is the more specific statute as it relates specifically to actions brought under CLEC.

*Summary*

In sum, we hold that an action alleging that a lender (or the lender's assignee) violated CLEC in the repossession and sale of collateral must be brought no later than six months after satisfaction of the loan. This construction of CL §12-1019 is quite consistent with the structure of CLEC. If a lender fails to comply with the provisions of CLEC, such as those pertaining to repossession and sale of collateral – as alleged in this case – the primary remedy in the statute is to limit the lender to the funds recovered from the sale and eliminate its right to obtain a deficiency judgment. So long as the loan remains open after repossession of the collateral, there is a possibility that the lender may seek a deficiency judgment against the borrower and the borrower may need to invoke the remedies provided by CLEC if the lender allegedly did not comply with CLEC in disposing of the collateral. Accordingly, the time for bringing an action for violation of CLEC must remain available during the period that the lender may seek a deficiency judgment. Once the loan is satisfied and there is therefore no possibility that the lender would seek a deficiency judgment, the borrower no longer needs the protection against a deficiency judgment provided by CLEC. Unsurprisingly, any action by the borrower is time-barred six months after the loan is satisfied.[22]

---

[22]Wells Fargo Financial adopts the view of the federal district court in *Bediako* that this leads to an "absurd and outrageous" result because, under *Scott*, the lender must bring an action for a deficiency judgment within four years while the borrower has a seemingly

26

Nothing in the record before us indicates that Ms. Patton's loan was satisfied before she brought suit. Accordingly, there was no basis to dismiss her claims under CLEC on limitations grounds.

## C. Whether an Assignee of a Loan Contract which the Originator Elected to be Governed by CLEC is Contractually Obligated to Comply with CLEC

### 1. Incorporation of external rules in a contract

The fourth count of Ms. Patton's complaint alleged breach of contract on the theory that the consumer protection provisions of CLEC had been incorporated into the contract and that the alleged violations of CLEC by Wells Fargo Financial also were a breach of its contractual obligations. Under Maryland law, the parties to a contract may voluntarily agree to define their contractual rights and obligations by reference to documents or rules external to the contract. *Wells v. Chevy Chase Bank, F.S.B.,* 377 Md. 197, 229, 832 A.2d 812 (2003) (credit card agreement between bank and consumer incorporated State statute regulating

---

unlimited time to bring an action for violation of CLEC if the borrower does not pay off the loan. But this just raises the question of what it means for the loan to be "satisfied" for purposes of CL §12-1019. *See White*, *supra*, 2012 WL 1067657 at *8 n.5 (suggesting use of definition from Black's Law Dictionary including full payment of a loan or a written discharge). There is certainly a reasonable argument that, once the lender is foreclosed from pursuing a deficiency judgment – *i.e.*, by the passage of four years without suit being filed or the limitations period being tolled in some manner – the loan is "satisfied" for purposes of CLEC as the borrower no longer needs insulation from a deficiency judgment, the primary remedy under CLEC. CLEC itself elsewhere refers to the possibility that the lender may decide to retain the collateral "in full satisfaction" of the borrower's obligations. CL § 12-1021(*l*)(4). In any event, we need not resolve this question for this case other than to note that the parade of horribles envisioned by Wells Fargo Financial is likely not so horrible as portrayed.

revolving credit agreements).  In dismissing the breach of contract count, the Circuit Court

appears to have accepted Wells Fargo Financial's argument that it was not bound

contractually to comply with the CLEC provisions because those terms were "involuntarily"

incorporated in the contract.  That argument was based on *Wells Fargo Home Mortgage v.*

*Neal*, 398 Md. 705, 922 A.2d 538 (2007), in which this Court declined to hold that federal

regulations referenced in a loan document created a contractual obligation for an assignee

of the loan.

## 2.    Whether external rules are incorporated voluntarily

*Neal - required reference to HUD regulations in deed of trust*

*Neal* concerned whether federal regulations referenced in a contract form required by

a federal agency amounted to the voluntary incorporation of those regulations as terms of the

contractual relationship between private parties.  398 Md. at 716-19.  In particular, the deed

of trust form for   federally-insured mortgages required by the Federal Housing

Administration ("FHA") acknowledged that regulations of the Department of Housing and

Urban Development ("HUD") could limit a lender's right to require immediate payment and

to foreclose in the event of a payment default and further stated that the instrument itself did

not authorize actions in violation of those regulations.  In *Neal,* homeowners who had

defaulted on a mortgage loan sought to forestall foreclosure by filing suit against the assignee

of the mortgage for failure to comply with HUD regulations.  *Id*. at 712-13.  This Court

described the issue as whether "a paragraph in an FHA-approved form deed of trust alluding

28

to a particular sub-set of HUD regulations is a bargained-for term between the mortgagor and the mortgagee such that an alleged violation of the regulations may give rise to a private action maintainable by the mortgagor against the mortgagee for breach of contract under Maryland law." 398 Md. at 716. The Court concluded that neither the originator of the loan nor the assignee of the contract had "voluntarily" elected to be governed by the provision. *Id.* at 717-18 & n. 7. The Court held that the reference in the form to the HUD regulations did not create an affirmative cause of action in contract for the borrower against an assignee of the lender for violating the HUD regulations, although the borrower could raise such a violation as a defense to foreclosure. *Id*. at 719.

*Epps and Decohen*: *voluntary incorporation of CLEC in car finance contracts*

Like Wells Fargo Financial in this case, assignees of car loans governed by CLEC have invoked *Neal* in two recent cases decided by the United States Court of Appeals for the Fourth Circuit. In both cases, that court considered, and rejected, the argument that the incorporation of CLEC in the loan contract was involuntary and, instead, held that the consumer protection provisions of CLEC were enforceable as contract obligations.

In *Epps v. JP Morgan Chase Bank*, 675 F.3d 315 (4th Cir. 2012), the borrower financed the purchase of a used car through an installment contract, which contained an election of CLEC nearly identical to the loan contract in the instant case. The contract was assigned to a bank which, when the borrower defaulted, repossessed and sold the vehicle. The borrower later brought suit against the bank, alleging causes of action similar to those

29

in the instant case, including a breach of contract count based on the incorporated CLEC terms. Citing *Neal*, the federal district court dismissed the contract count on the ground that the lender had no choice about the reference concerning CLEC.[23]

On appeal, the Fourth Circuit reversed. It distinguished *Neal*, noting that "neither the assignor nor the assignee had any control over the terms of the FHA deed of trust." 675 F.3d at 328. By contrast, in the case before it, the car dealer "and by extension, its successor-in-interest," the bank, had the option of having the installment contract covered by either RISA or CLEC. *Id*. The court noted that the car dealer made a business judgment when it chose to adopt CLEC rather than RISA and "[the bank] is bound by that choice." *Id*. The court concluded that the bank "may not take advantage of favorable, voluntary contract terms, and then cry foul when it fails to adhere to its own contractually derived obligations." *Id*.[24]

A different panel of the Fourth Circuit reached the same conclusion in a similar case. *Decohen v. Capital One, N.A.*, 703 F.3d 216 (4th Cir. 2012). In that case, the borrower financed the purchase of a used car under a loan contract that incorporated CLEC in terms nearly identical to those of the contract in the instant case. In addition, the loan contract also financed a "debt cancellation agreement." Under CLEC, such an agreement could be financed as part of the loan contract when it provides for the lender to cancel the remaining

---

[23]The district court also dismissed the case on preemption grounds not relevant to the instant case.

[24]The court also relied on *Wells v. Chevy Chase Bank, F.S.B.*, *supra*, in which this Court held that a bank was contractually bound by the terms of subtitle 9 of Title 12 of the Commercial Law Article when it incorporated those provisions in its credit card agreement.

debt if the car is totaled and insurance is insufficient to cover the remaining balance.[25] The

car dealer assigned the loan contract to a bank. The debt cancellation agreement did not

comply with CLEC, however, as later became apparent when the car was declared a total loss

and the insurance proceeds proved insufficient to cover the remaining payments, but the debt

cancellation agreement did not wipe out the existing loan balance. The borrower filed suit

against the assignee bank and others in circuit court, making claims similar to those in this

action. The case was removed by the defendants to federal district court, which dismissed

the claims against the bank. The borrower then appealed the dismissal of the contract claims.

One of the issues on appeal was whether the provisions of CLEC had become part of

the loan contract such that the plaintiff could state a claim for breach of contract. The Fourth

Circuit stated that "[t]he inquiry ... turns on whether the CLEC clause in [the loan contract]

was freely chosen by the parties." 703 F.3d at 227. The court found the facts of the case

before it indistinguishable from *Epps* and reached the same conclusion as the court in Epps:

"[The bank] may not purchase [a loan contract] that elects the CLEC, accept payments on a

principal amount that includes a $600 fee for a debt cancellation agreement governed by the

CLEC, and then refuse to abide by the terms of the CLEC when it is no longer convenient

to do so." *Id*. at 228. The court concluded that the reference to CLEC was sufficient to

incorporate the terms of CLEC in the contract and that a breach of contract claim was

adequately pled. *Id*. at 228-29.

---

[25]*See* CL §§12-1001(h), 12-1005(c).

31

**3.     Whether reference to CLEC in Ms. Patton's contract was voluntary**

Analogizing *Neal* to the instant case, Wells Fargo Financial argues that a contract term, such as a lender's election for a loan contract to be governed by CLEC, that is "forced upon a lender by a law or regulation may not be used offensively as a sword against that lender." Wells Fargo Financial asserts that its assignor was forced to elect CLEC because the loan contract would have been in violation of Maryland law if Fox Chevrolet had not elected CLEC. Further, it argues that it is not subject to CLEC because it "did not participate in negotiations regarding the contract," did not author the contract, and did not voluntarily elect to be governed by CLEC in the contract it assumed from Fox Chevrolet.

The description of the CLEC terms as "involuntary" provisions of the contractual relationship between Wells Fargo Financial and Ms. Patton does not appear quite accurate for at least two reasons. First, when Fox Chevrolet and Ms. Patton entered into the financing agreement, Fox Chevrolet had the option under Maryland law – as the Fourth Circuit has noted – of having an agreement subject to RISA or to CLEC. *See* CL §12-1013.1.[26] Fox Chevrolet chose CLEC, presumably because of certain benefits CLEC provides for lenders that are not available under RISA.[27] *See Biggus v. Ford Motor Credit Co.*, 328 Md. 188,

---

[26] In order to issue a loan governed by CLEC, a "credit grantor shall make a written election to that effect in the agreement, note or other evidence of the loan." CL §12-1013.1. The language of the statute indicates only that a credit grantor "shall make a written election," if it seeks to be governed by CLEC, not that it must elect CLEC.

[27] Even if, as Wells Fargo Financial notes, Fox Chevrolet used a pre-printed form, it chose a pre-printed form that incorporates CLEC.

193-203, 613 A.2d 986 (1992); *Ford Motor Credit Co. v. Roberson* , 420 Md. 649, 658-68, 25 A.3d 110 (2011). Fox Chevrolet could have chosen RISA to govern its agreement with Ms. Patton. It was not required or forced to choose CLEC.[28]

Second, Wells Fargo Financial voluntarily chose to take assignment of a loan contract that incorporated CLEC. As previously noted, under CLEC the phrase "credit grantor" includes an assignee of the originator of the loan. Consistent with that provision, the loan document itself advised that "[a]ny holder of this consumer credit contract" would be subject to the same claims and defenses as the originator of the loan. In accepting the assignment, Wells Fargo Financial expressly agreed to be governed by CLEC in the exercise of its rights under the contract.

Accordingly, we agree with the analysis and conclusion of the federal courts in *Epps* and *Decohen*. Wells Fargo Financial was contractually bound to comply with CLEC in carrying out its rights under the loan contract with Ms. Patton. Ms. Patton's breach of contract claim is not defective as a matter of law.

### III. Conclusion

For the reasons outlined above, we conclude:

1.      An action by a borrower alleging that a lender violated CLEC in the course of repossessing and selling collateral must be brought no later than six months after the loan is

---

[28]By contrast, in *Neal*, the mortgagee was required to use the FHA form. *See Neal*, 398 Md. at 717-18.

satisfied, pursuant to CL §12-1019.  The one-year period of limitations set forth in the Maryland Equal Credit Opportunity Act, CL §12-707(g), does not apply to such an action.

2.	An originating lender who enters into a retail installment contract with a consumer borrower may choose, through a written election in the contract, to have the contract governed by CLEC.  If the originating lender assigns that contract, the assignee is obligated to comply with the provisions of CLEC in carrying out its right to repossess and sell collateral upon default by the consumer borrower.  A failure to do so is a breach of contract.

**JUDGMENT OF THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY REVERSED AND CASE REMANDED TO THAT COURT FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY APPELLEE.**

34