*Jabari Morese Lyles v. Santander Consumer USA Inc.*, Misc. No. 3, September Term, 2021. Opinion by Getty, C.J.

**COMMERCIAL LAW — CREDIT GRANTOR CLOSED END CREDIT PROVISIONS — PENALTY FOR KNOWING VIOLATION — CALCULATION OF DAMAGES**

Answering a certified question from the United States District Court for the District of Maryland, the Court of Appeals held that Maryland Code (1983, 2013 Repl. Vol., 2021 Supp.), Commercial Law Article § 12-1018(b) requires a credit grantor that knowingly violates the Credit Grantor Closed End Credit Provisions to forfeit to the borrower treble the amount of interest, fees, and charges collected in violation of the subtitle.

United States District Court
For the District of Maryland
Case No. 1:21-cv-00566-CCB
Argued: October 4, 2021

IN THE COURT OF APPEALS

OF MARYLAND

Misc. No. 3

September Term, 2021

JABARI MORESE LYLES

v.

SANTANDER CONSUMER USA INC.

*Getty, C.J.
*McDonald,
Watts,
Hotten,
Booth,
Biran,
Wilner, Alan M.
    (Senior Judge, Specially Assigned)

JJ.

Opinion by Getty, C.J.

Filed: May 13, 2022

*Getty, C.J., and McDonald, J., now Senior Judges, participated in the hearing and conference of this case while active members of this Court; after being recalled pursuant to Maryland Constitution, Article IV, Section 3A, they also participated in the decision and adoption of this opinion.

Pursuant to Maryland Uniform Electronic Legal Materials Act (§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Suzanne C. Johnson, Clerk

Consumers may use "closed end credit" and "revolving credit" in making purchases for a variety of consumer goods by borrowing funds through a credit plan. "Closed end credit" requires a borrower to repay the amount owed in multiple installments, generally of an equal amount, over a fixed period of time. "Revolving credit" enables a borrower to purchase goods or secure loans on a continuing basis as long as the borrower's total balance does not exceed a specified limit. The borrower has the option of paying the minimum required monthly payment, paying any amount above the minimum payment each month, or paying off the entire balance.

Borrowers frequently access closed end credit to finance the purchase of a motor vehicle. In Maryland, if the purchase of a motor vehicle is financed by an installment sale, the lender may elect for the contract to be governed by either of two statutes located in Title 12 of the Commercial Law Article ("CL") of the Maryland Code—the Credit Grantor Closed End Credit Provisions ("CLEC"), CL §§ 12-1001 *et seq.*, or the Maryland Retail Installment Sales Act, CL §§ 12-601 *et seq. See Patton v. Wells Fargo Fin. Md., Inc.*, 437 Md. 83, 88–89 (2014). The present matter involves a borrower who purchased a motor vehicle and financed it by closed end credit pursuant to an agreement governed by CLEC.

Before this Court is a certified question of law from the United States District Court for the District of Maryland ("federal district court") regarding the calculation of damages under Maryland Code ("Md. Code"), (1983, 2013 Repl. Vol., 2021 Supp.), Commercial Law Article § 12-1018(b). Appellant Jabari Morese Lyles ("Mr. Lyles") initiated the underlying class action against Appellee Santander Consumer USA, Inc. ("Santander") for alleged violations of CLEC.

This matter comes before the Court with unique posturing. The question posed to this Court will inform the federal district court's analysis of its subject matter jurisdiction after resolution of the certified question. Mr. Lyles, the Plaintiff in the federal district court, advocates for a damages calculation that would entitle him to *lesser* monetary relief than the interpretation Santander argued before the federal district court. We hold that, based upon prior caselaw regarding CLEC, a plain language analysis of CL § 12-1018(b), and a review of the pertinent legislative history, CL § 12-1018(b) requires a credit grantor who knowingly violates CLEC to forfeit three times the amounts of interest, fees, and charges collected in violation of CLEC.

## BACKGROUND

Pursuant to the Maryland Uniform Certification of Questions of Law Act, Md. Code (1996, 2020 Repl. Vol.), Courts & Judicial Proceedings Article ("CJ") §§ 12-601 *et seq.*, this Court has the power to certify questions of law to another court and answer questions of law presented to it. "[I]f the answer may be determinative of an issue in pending litigation in the certifying court and there is no controlling appellate decision, constitutional provision, or statute of this State[,]" this Court may "answer a question of law certified to it by a court of the United States[.]" CJ § 12-603; *see also United Bank v. Buckingham*, 472 Md. 407, 411 (2021). In answering a certified question of law, this Court resolves only issues of Maryland law, not questions of fact. *Parler & Wobber v. Miles & Stockbridge*, 359 Md. 671, 681 (2000). As such, this Court accepts the statement of facts submitted to it by the certifying court and will not "evaluate or weigh the evidence[.]" *Reed*

2

*v. Campagnolo*, 332 Md. 226, 228 (1993) (quoting *Food Fair Stores v. Joy*, 283 Md. 205, 219 n.7 (1978)).

The Maryland General Assembly enacted CLEC and other legislation as a part of the Credit Deregulation Act of 1983 "to entice creditors to do business in the State[.]" *Ford Motor Credit Co., LLC v. Roberson*, 420 Md. 649, 662 (2011); *see also* 1983 Md. Laws, ch. 143. The General Assembly intended to enable Maryland banks "to compete more effectively with banks in nearby states." *Patton*, 437 Md. at 105. As this Court has previously explained:

> Prior to the 1983 session of the General Assembly, four Maryland banks transferred certain of their operations to Delaware where the banking laws were more favorable. These included the credit card operations of two major banks based in Baltimore. Some 1,000 jobs were lost in the Baltimore area. The response by the General Assembly was Chapter 143 of the Acts of 1983, the enactment of which was urged by then Mayor Schaefer of Baltimore and others. Chapter 143 has become known as the Credit Deregulation Act of 1983.

*Biggus v. Ford Motor Credit Co.*, 328 Md. 188, 197 (1992).

CLEC provides consumer protection to borrowers in transactions involving closed end credit, as well as establishes parameters and requirements with which credit grantors must comply. *Patton*, 437 Md. at 89. The subtitle also establishes various remedies to a borrower if the credit grantor fails to comply with CLEC. *Id*. at 90. Notably, these protections, parameters, requirements, and remedies only apply if a credit grantor affirmatively elects CLEC to apply to a closed end credit loan. *See* CL § 12-1013; CL § 12-1013.1.

3

The following facts are provided in the federal district court's Certification Order. On or about January 11, 2021, Mr. Lyles initiated the underlying class action in the Circuit Court for Baltimore City alleging that Santander violated CLEC. Mr. Lyles entered into a Retail Installment Sales Contract ("RISC") to finance the purchase of a motor vehicle. The RISC, subsequently assigned to Santander, expressly invoked CLEC as the governing law. Mr. Lyles financed $20,657.00 in the RISC with finance charges of $15,596.44 throughout the duration of the RISC. Mr. Lyles completed several payments to Santander under the RISC. As of the filing of the underlying class action, Santander collected at least $27,029.67 on the RISC, which amounts to $6,372.67 more than the amount Mr. Lyles financed under the RISC. According to Santander, $15,603.54 remains due on the RISC.

Santander charges a convenience fee to its customers "for making a payment by phone through a live representative or through an automated system or through the internet[.]" On Mr. Lyles' RISC, Santander charged and collected twelve convenience fees, each for $10.95, totaling $131.40.

Mr. Lyles maintains that Santander knowingly violated CLEC by charging the twelve convenience fees and asserts that he and the purported class are entitled to relief under CL § 12-1018(a)(2) and CL § 12-1018(b). Santander removed this action to the federal district court on March 4, 2021 pursuant to 28 U.S.C. § 1332(d)[1], which, in part, requires the class action's amount in controversy to exceed $5,000,000.

---

[1] 28 U.S.C. § 1332(d) sets forth the requirements for a federal district court to have original jurisdiction over a class action. This statute provides:

Presently, a Motion for Remand is pending before the federal district court. As such, the federal district court's subject matter jurisdiction over this matter is dependent on the proper amount in controversy—i.e., the appropriate amount of damages Mr. Lyles may be entitled to under CL § 12-1018(b).

The federal district court certified the following question of law to this Court to determine the appropriate interpretation of CL § 12-1018(b):

> If a credit grantor is found to have knowingly violated Credit Grantor Closed End Credit Provisions ("CLEC"), Maryland Code Annotated, Commercial Law §§ 12-1001, *et seq.*, does [CL] § 12-1018(b) require the credit grantor to return three times: (1) all amounts collected by the credit grantor in excess of the principal amount financed; (2) only those amounts collected that the borrower contends violate CLEC (in this case, the convenience fees); or (3) some other amount?

For the reasons that follow, we hold that CL § 12-1018(b) requires a credit grantor to return three times the amount of interest, fees, and charges collected that the borrower contends violate CLEC (in this case, the convenience fees).

---

(2) The district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which–

> (A) any member of a class of plaintiffs is a citizen of a State different from any defendant;
>
> (B) any member of a class of plaintiffs is a foreign state or a citizen or subject of a foreign state and any defendant is a citizen of a State; or
>
> (C) any member of a class of plaintiffs is a citizen of a State and any defendant is a foreign state or a citizen or subject of a foreign state.

28 U.S.C. § 1332(d).

5

**A.     *Parties' Contentions***

Mr. Lyles maintains that if a credit grantor knowingly violates CLEC, CL § 12-1018(b) requires the credit grantor to forfeit three times the amount of the unauthorized charges. In this case, that would total $394.20, which is three times $131.40, the total amount collected for the twelve convenience fees charged. In support of this contention, Mr. Lyles relies upon the recent Court of Special Appeals' holding in *Bolling v. Bay Country Consumer Finance, Inc.*, 251 Md. App. 575 (2021). Mr. Lyles asserts that the Court of Special Appeals' interpretation of CL § 12-1018(a)(2), in conjunction with the plain language of CL § 12-1018(b), indicates that a knowing violation of CLEC entitles the borrower to treble the unauthorized amounts charged.

In addition, Mr. Lyles emphasizes that the legislative history of CL § 12-1018(b) demonstrates that the penalty provisions set forth in CLEC are identical to the penalties set forth in CL § 12-413, the Maryland Secondary Mortgage Loan Law. Accordingly, Mr. Lyles asserts that caselaw and regulatory decisions interpreting CL § 12-413 provide the appropriate calculation of damages under CL § 12-1018(b).

Before the federal district court, Santander argued that under CL § 12-1018(b) a credit grantor would be required to pay three times the amount collected in excess of the principal amount financed under the RISC. In this matter, that would total $19,118.01, which is three times $6,372.67, the amount Santander has collected above the amount financed under the RISC. However, before this Court, Santander did not substantively oppose Mr. Lyles' interpretation of CL § 12-1018(b). Counsel for Santander emphasized

6

at oral arguments the "interesting position" Santander maintains of "having an adversary reducing the amount sought by two million dollars." Santander cautions that the *Bolling* decision is not properly before the Court. Therefore, it would be imprudent to endorse that holding here. Further, Santander maintains that *Bolling* did not specifically analyze CL § 12-1018(b) and, accordingly, should not influence this Court's statutory interpretation.

**B.     *Caselaw Interpreting CL § 12-1018(a)***

The Court's analysis of CL § 12-1018(b) begins, naturally, with CL § 12-1018(a). *See Berry v. Queen*, 469 Md. 674, 687 (2020) (citing *Neal v. Balt. City Bd. of Sch. Comm'rs*, 467 Md. 399, 415 (2020)) ("Our inquiry is not confined to the specific statutory provision at issue on appeal."). CL § 12-1018(a) provides, in part:

> (2) Except for a bona fide error of computation, if a credit grantor violates any provision of this subtitle the credit grantor may collect only the principal amount of the loan and may not collect any interest, costs, fees, or other charges with respect to the loan.

CL § 12-1018(a)(2).

At the outset, the Court notes that the United States Court of Appeals for the Fourth Circuit, the United States District Court for the District of Maryland, and the Court of Special Appeals of Maryland have all interpreted CL § 12-1018(a)(2), some of which have produced divergent results. We address each case in turn.

The United States Court of Appeals for the Fourth Circuit first wrestled with the statutory language of CL § 12-1018(a)(2) in *Bedaiko v. American Honda Finance Corp.*,

7

537 F. App'x. 183, 186–87 (4th Cir. 2013).[2]  There, Melissa Bedaiko, on behalf of a putative class, asserted that American Honda Finance Corporation ("Honda Finance") violated CLEC by providing inadequate notice of the private sale of her repossessed automobile. *Id*. at 184.  In 2004, Ms. Bedaiko purchased a used automobile with financing she obtained by a RISC. *Id*. at 185.  Ms. Bedaiko eventually defaulted on her loan, and, as a result, Honda Finance repossessed her vehicle on or before April 28, 2005. *Id*.  Honda Finance notified Ms. Bedaiko in writing that it would sell the vehicle at a private sale after May 15, 2005. *Id*.  Honda Finance sold the vehicle in a private sale on July 1, 2005, and subsequently sent a post-sale notice to Ms. Bedaiko demanding payment on the deficiency of $7,036.80, which remained due on the RISC. *Id*.

In 2010, Ms. Bedaiko filed a putative class action complaint in the United States District Court for the District of Maryland against Honda Finance alleging defects in the notice provided. *Bedaiko*, 537 F. App'x. at 185.  Honda Finance filed a motion to dismiss asserting that Ms. Bedaiko's claims failed as a matter of law. *Id*.  The court granted Honda Finance's motion to dismiss, concluding that the purported CLEC violation did not result in any actionable damages "because CLEC permits Honda Finance to recover the principal amount of its loan notwithstanding the alleged CLEC violation." *Id*.  Ms. Bedaiko subsequently appealed to the United States Court of Appeals for the Fourth Circuit. *Id*. The dispositive issue before the Fourth Circuit was whether Ms. Bedaiko failed to state a

---

[2] Unpublished opinions of the United States Court of Appeals for the Fourth Circuit are not binding precedent in that court; however, it is appropriate to begin with *Bedaiko*, which laid the foundation for the published opinions that followed.

8

claim because Honda Finance had not collected more than the principal amount of her loan. *Id*. at 185–86.

The Fourth Circuit agreed with the United States District Court for the District of Maryland's conclusion that Ms. Bedaiko's claims failed as a matter of law due to her deficiency in alleging actual, compensable damages. *Bedaiko*, 537 F. App'x. at 186. The Court explained that CL § 12-1018(a)(2), "by its plain terms, limits a debtor's relief under CLEC to any amounts paid in excess of the principal amount of the loan." *Id*. The Court further emphasized that CL § 12-1018(a)(2) "expressly permits creditors to recover the principal amount of a loan." *Id*. at 187. As such, the Court determined that Ms. Bedaiko had "no right to monetary relief under [CL §] 12-1018(a)(2)." *Id*.

Two years after *Bedaiko*, the Fourth Circuit revisited this topic—this time issuing a published opinion—in *Gardner v. GMAC, Inc.*, 796 F.3d 390, 394 (4th Cir. 2015). *Gardner* also involved a credit grantor repossessing vehicles following borrowers defaulting on their respective loans. *Id.* at 393. The borrowers in *Gardner* attempted to distinguish the Fourth Circuit's previous holding in *Bedaiko* by claiming that the credit grantor in *Bedaiko* fully complied with CLEC. *Id*. at 394. The Fourth Circuit declined to make this distinction and, instead, chose to follow the rules articulated in its prior holding. *Id*. The Court explained that the borrowers had not paid anything in excess of the principal amount of their loans to the credit grantor, and, therefore, did not allege any actual damages under CL § 12-1018(a)(2). *Id*.

Under this reasoning, regardless of whether a borrower has asserted a valid CLEC violation, if the borrower has not paid the credit grantor in excess of the principal loan

9

amount, the borrower "'is unable to state a claim because she [or he] has suffered no actual damages that are compensable under CLEC.'" *Gardner*, 796 F.3d at 394 (quoting *Bedaiko*, 537 F. App'x at 188). To determine if the credit grantor has received money in excess of the principal loan amount, the federal courts "recharacterize all of the borrower's payments during the life of the loan as payments toward [the] principal and then subtract that total and the sale proceeds from the original principal amount of the loan." *Id.* (citing *Bedaiko*, 537 F. App'x at 186 & n.1).

Relying principally on *Bedaiko* and *Gardner*, the United States District Court for the District of Maryland had occasion to apply CL § 12-1018(a)(2) in *Campbell v. Toyota Motor Credit Corp.*, No. PWG-18-150, 2018 WL 3439250 at *2 (D. Md. July 17, 2018). In *Campbell*, Delphine Campbell entered into a RISC assigned to Toyota Motor Credit Corporation ("TMCC"), which affirmatively elected CLEC as the governing law, to purchase an automobile. *Id.* Ms. Campbell eventually stopped making payments to TMCC under the RISC. *Id.* As such, TMCC repossessed the vehicle, conducted a private sale of the automobile, and provided Ms. Campbell with a post-sale notice. *Id.* Ms. Campbell filed a class action lawsuit against TMCC in the Circuit Court for Montgomery County alleging violations of CLEC's notice requirements. *Id.* at *1. TMCC subsequently removed the action to the United States District Court for the District of Maryland. *Id.* Before that court, TMCC filed a motion to dismiss, arguing that Ms. Campbell failed to state a claim because "CLEC does not permit statutory damages[,]" and Ms. Campbell did not make payments to TMCC in excess of the principal amount of the loan. *Id.* at *6.

In conducting its analysis, the United States District Court for the District of Maryland emphasized that CL § 12-1018(a)(2) "merely stops a creditor's collection from the debtor beyond the principal loan amount." *Campbell*, 2018 WL 3439250 at *7. The court went on to explain that "even if TMCC violated CLEC's notice requirement as Ms. Campbell alleges, it still would be entitled to collect the principal amount of the loan; TMCC is not required, as a result of its alleged CLEC violation, to refund or forfeit all money it received beyond the principal." *Id.* Accordingly, the United States District Court for the District of Maryland concluded that Ms. Campbell did not appropriately plead a claim "under CLEC because she [had] not suffered any injury for which the statute affords a monetary recovery." *Id.* at *8.

Most recently, the Court of Special Appeals interpreted CL § 12-1018(a)(2) in *Bolling*. 251 Md. App. at 611. Compared to the federal courts' interpretations, the *Bolling* court rendered a different analysis of when a borrower may bring a claim for relief under CL § 12-1018(a)(2). *Id.* at 594. The intermediate appellate court determined that CL § 12-1018(a)(2) does not "bar relief for a violation of CLEC until after the borrower pays off the principal amount of the loan[.]" *Id.* Instead, the Court of Special Appeals concluded that CL § 12-1018(a)(2) "limit[s] the amount of damages that a credit [grantor] has to pay[.]" *Id.* As such, the intermediate appellate court ultimately held that "a cause of action may accrue after a violation has occurred where the borrower can show that she [or he] has suffered compensable damage under CLEC . . . or where the borrower requests appropriate declaratory or injunctive relief." *Id.* at 596–97.

11

It is clear that the federal courts and the intermediate appellate court disagree as to when a borrower is permitted to bring a claim under CL § 12-1018(a)(2). However, the federal courts and the intermediate appellate court both recognize that "'CLEC does not provide for any fixed statutory damages beyond the [borrower's] actual loss[,]'" and "that the penalty prescribed under CL § 12-1018(a)(2) confines the credit grantor to collection of the principal amount of the loan, thereby forfeiting any outstanding interest, charges, costs and fees[.]" *Bolling*, 251 Md. App. at 594 (quoting *Bedaiko*, 537 F. App'x at 187). The issue of when a borrower is permitted to bring a claim under CL § 12-1018(a)(2) is not presently before this Court. Nonetheless, the principle that CL § 12-1018(a)(2) limits a credit grantor's collection to the principal loan amount informs this Court's understanding of CL § 12-1018(b), to which we now turn.

## C.     *CL § 12-1018(b)*

Well-settled principles of statutory construction guide the appropriate calculation of damages under CL § 12-1018(b). When engaging in statutory interpretation, this Court's "chief objective is to ascertain the General Assembly's purpose and intent when it enacted the statute." *Berry*, 469 Md. at 687 (citing *Neal*, 467 Md. at 415). As such, "[w]e assume that the legislature's intent is expressed in the statutory language and thus our statutory interpretation focuses primarily on the language of the statute to determine the purpose and intent of the General Assembly." *Id.* (quoting *Brown v. State*, 454 Md. 546, 550–51 (2017)) (internal quotation marks omitted). Further, "[w]e read the 'statute as a whole to ensure that no word, clause, sentence or phrase is rendered surplusage, superfluous,

12

meaningless or nugatory.'" *United Bank*, 472 Md. at 423 (quoting *Town of Forest Heights v. Maryland-Nat'l Capital Park and Planning Comm'n*, 463 Md. 469, 478 (2019)).

We apply these principles to the relevant statutory language, which provides:

(b) In addition, a credit grantor who knowingly violates any provision of this subtitle shall forfeit to the borrower 3 times the amount of interest, fees, and charges collected in excess of that authorized by this subtitle.

CL § 12-1018(b).

CL § 12-1018(b) provides the penalty provision for knowing violations of CLEC. The provision begins with the words "[i]n addition," which signals that this is an additional penalty to the penalty set forth in subsection (a)(2). A credit grantor that violates CLEC is limited by CL § 12-1018(a)(2) to collect only the principal loan amount from the borrower, and a credit grantor that knowingly violates the subtitle is subject to further liability under CL § 12-1018(b).

The provision continues, stating that the amounts to be trebled are the "interest, fees, and charges collected in excess of that authorized by this subtitle." CL § 12-1018(b). The phrase "in excess of that authorized by this subtitle" is central to this Court's analysis. This language identifies that the amount to be trebled is that which the credit grantor is not permitted to charge to the borrower under CLEC. Put differently, the amounts that a credit grantor charged in violation of CLEC are the amounts to be trebled for a knowing violation of the subtitle.

If the General Assembly intended for this penalty provision to require a credit grantor to pay treble the amount collected in excess of the principal loan amount, it would have written the provision to read as such. *See Peterson v. State*, 467 Md. 713, 727 (2020)

13

(explaining that this Court presumes that the General Assembly "meant what it said and said what it meant."); *Prop. & Cas. Ins. Guar. Corp. v. Beebe-Lee*, 431 Md. 474, 491 (2013) (holding that if the General Assembly wanted to impose a settlement agreement constraint on a statute's authority, it would have done so in the plain language of the statute at issue); *Sacchet v. Blan*, 353 Md. 87, 93 (1999) (emphasizing that if the General Assembly intended to include certain common law crimes in its legislation, it would have written the statute at issue to reflect such an intention). However, the plain language of CL § 12-1018(b) makes no reference to amounts collected in excess of the principal amount financed. The General Assembly only expressly authorized forfeiture of "the amount of interest, fees, and charges" that are "collected in excess of that authorized by the subtitle."

As such, the amount to be trebled under CL § 12-1018(b) are those amounts collected that are not authorized under CLEC.

### D. *Legislative History of CL § 12-1018*

"While this Court 'begin[s] our analysis by first looking to the normal, plain meaning of the language of the statute,'" "[i]t is the 'modern tendency of this Court to continue the analysis of the statute beyond the plain meaning' of the statutory language." *United Bank*, 472 Md. at 426 (quoting *Brown*, 454 Md. at 551); *Moore v. RealPage Util. Mgmt., Inc.*, 476 Md. 501, 514 (2021) (quoting *In re: S.K.*, 466 Md. 31, 50 (2019)). In doing so, the Court may examine "the context of a statute, the overall statutory scheme, and archival legislative history of relevant enactments." *In re: S.K.*, 466 Md. at 50 (quoting *Brown*, 454 Md. at 551) (internal quotation marks omitted). We see fit to engage in such

14

a check here, as an overview of the statute's legislative history indicates that the language adopted in CL § 12-1018(a)(2) and CL § 12-1018(b) is not unique to CLEC. Here, the legislative history reveals that this language originated in CL § 12-413, the Maryland Secondary Mortgage Loan Law.

As previously discussed, the General Assembly enacted CLEC as a part of the Credit Deregulation Act of 1983. 1983 Md. Laws, ch. 143. When Senate Bill 591, which became CLEC, was introduced in the General Assembly, it was viewed primarily as a deregulation effort to enable Maryland banks "to compete more effectively with banks in nearby states." *Patton*, 437 Md. at 105. Notably, Senate Bill 591's original language did not include the penalty provisions that would eventually be codified as CL § 12-1018(a) and CL § 12-1018(b). Instead, upon urging from the Attorney General and the Secretary of Licensing and Regulation,[3] additional protections for borrowers and penalties for credit grantors who violated the provisions were added as amendments to the bill. *Patton*, 437 Md. at 105–06. Markedly, the bill file indicates that "[t]hese amendments would add new sections . . . identical as to penalty, as those now existing under the Maryland Secondary Mortgage Loan Law."[4] *See* Senate Bill 591, Analysis of Proposed Administration

---

[3] The Division of Labor and Industry has been a subunit within a cabinet-level department that has changed names three times since 1970. From 1970 to 1995, it was the Department of Licensing and Regulation. It was renamed the Department of Labor, Licensing, and Regulation from 1995 to 2019. In 2019, it was renamed the Department of Labor. *See* Maryland Department of Labor—Historical Evolution, Maryland Manual On-Line https://msa.maryland.gov/msa/mdmanual/20dllr/html/dllrh.html [https://perma.cc/XW69-6882].

[4] It is evident that CL § 12-413 served as a template for the General Assembly in drafting the language of CL § 12-1018(a) and CL § 12-1018(b). CL § 12-413 states:

Amendments (March 28, 1983) in legislative bill file for Senate Bill 591. The General Assembly ultimately adopted the proposed amendments with the penalty provisions, which were codified as CL § 12-1018(a) and CL § 12-1018(b) respectively. In their original form, these provisions read as follows:

> (a) Except for a bona fide error of computation, if a credit grantor violates any provision of this subtitle the credit grantor may collect only the principal amount of the loan and may not collect any interest, costs, or other charges with respect to the loan.

> (b) In addition, a credit grantor who knowingly violates any provision of this subtitle shall forfeit to the borrower 3 times the amount of interest and charges collected in excess of that authorized by this subtitle.

1983 Md. Laws, ch. 143.

In 1990, the General Assembly amended CLEC to "clarif[y] the rights of borrowers and credit grantors under Subtitles 9 and 10 of Commercial Law when errors are discovered in certain credit agreements." *See* Senate Bill 403, Bill Analysis of Revolving and Closed End Credit, Corrections (1990 General Assembly) in legislative bill file for Senate Bill 403. The General Assembly specifically amended CL § 12-1018(a) to provide credit grantors a right to cure certain CLEC violations if: (1) the violation was unintentional and

---

> Except for a bona fide error of computation, if a lender violates any provision of this subtitle he may collect only the principal amount of the loan and may not collect any interest, costs, or other charges with respect to the loan. In addition, a lender who knowingly violates any provision of this subtitle also shall forfeit to the borrower three times the amount of interest and charges collected in excess of that authorized by law.

CL § 12-413.

16

in good faith; (2) within 10 days after receiving notice of the error or violation, the credit grantor corrects the error or violation; and (3) the credit grantor makes the borrower whole for all losses, including reasonable attorney's fees and interest. *Id*.; *see* CL § 12-1018(a)(3).

Although the General Assembly amended CL § 12-1018(a) during the 1990 Legislative Session, CL § 12-1018(b) remained unchanged in its original form. During the 1993 Legislative Session, the General Assembly amended CL § 12-1018 to include the word "fees" as an impermissible collection. 1993 Md. Laws, ch. 404. As such, CL § 12-1018(b) has remained unchanged since its original enactment in 1983, with the exception of this one-word addition.

Nothing in the legislative history indicates that the General Assembly intended for CL § 12-1018(b) to be interpreted inconsistently with its plain meaning. This penalty is distinctly separate from CL § 12-1018(a)(2), which addresses the amounts collected in excess of the principal loan amount. CL § 12-1018(b) provides an additional penalty for credit grantors that knowingly violate CLEC, and, therefore, are liable for treble the amounts that were collected in violation of the subtitle. Accordingly, assuming Santander knowingly collected the convenience fees alleged by Mr. Lyles in violation of CLEC, the appropriate calculation of damages under CL § 12-1018(b) is treble the amount of convenience fees collected.

17

## CONCLUSION

For the foregoing reasons, we hold that CL § 12-1018(b) requires a credit grantor that is found to have knowingly violated CLEC to forfeit three times the amount of interest, fees, and charges collected in violation of the subtitle.

**CERTIFIED QUESTION OF LAW ANSWERED AS SET FORTH ABOVE. COSTS TO BE DIVIDED EQUALLY.**

18