*Lakeview Loan Servicing LLC & Nationstar Mortgage LLC v. Tonda M. Baxter*, No. 691, September Term, 2024.  Opinion by Nazarian, J.

**CREDIT GRANTOR CLOSED END CREDIT PROVISIONS – CREDIT GRANTORS – LOAN SERVICERS**

A loan servicer who holds rights and obligations under a debt instrument governed by the Credit Grantor Closed End Credit Provisions ("CLEC"), Md. Code (1975, 2013 Repl. Vol.), § 12-1001 *et seq*. of the Commercial Law Article ("CL"), qualifies as a credit grantor for purposes of CLEC.

**CREDIT GRANTOR CLOSED END CREDIT PROVISIONS – FEE RESTRICTIONS – CONVENIENCE FEES**

CLEC  regulates a relationship between the credit grantor and the borrower such that its fee restrictions apply throughout the life of the loan and are not confined to one moment in time.

Circuit Court for Anne Arundel County
Case No. C-02-CV-22-000654

REPORTED

IN THE APPELLATE COURT

OF MARYLAND

No. 0691

September Term, 2024

_____

LAKEVIEW LOAN SERVICING LLC &
NATIONSTAR MORTGAGE LLC

v.

TONDA M. BAXTER

_____

Nazarian,
Kehoe, S.,
Wright, Jr., Alexander
    (Senior Judge, Specially Assigned),

JJ.

_____

Opinion by Nazarian, J.

_____

Filed: November 25, 2025

Pursuant to the Maryland Uniform Electronic Legal
Materials Act (§§ 10-1601 et seq. of the State
Government Article) this document is authentic.



Gregory Hilton, Clerk

* Judge Dan Friedman and Judge Rosalyn Tang
did not participate in the decision to report this
opinion pursuant to Md. Rule 8-605.1.

This appeal tests the reach of the Credit Grantor Closed End Credit Provisions ("CLEC"), contained in Title 12 of the Commercial Law Article. Three years after Tonda Baxter took out a loan secured by a deed of trust on her home (the "loan"), Lakeview Loan Servicing LLC ("Lakeview") acquired the servicing rights to the loan and retained Nationstar Mortgage LLC ("Nationstar") as its sub-servicer. In a civil complaint for declaratory relief in the Circuit Court for Anne Arundel County, Ms. Baxter alleged that Lakeview and Nationstar violated CLEC when they charged and collected convenience fees in connection with the loan. Lakeview and Nationstar moved for summary judgment and Ms. Baxter responded with a cross-motion under Maryland Rule 2-502 that asked the court to decide CLEC's applicability to the loan, to Lakeview and Nationstar as credit grantors, and to the relationship between the parties. The circuit court denied Lakeview and Nationstar's summary judgment motion, granted Ms. Baxter's cross-motion, and entered a declaration in her favor. Lakeview and Nationstar appeal the court's order and declaration, and we affirm.

## I.     BACKGROUND

On June 26, 2018, Ms. Baxter signed a promissory note with NFM, Inc. ("NFM") for $284,747.00 (the "note") and secured the note with a purchase money deed of trust on her residential property. The note elected CLEC as the governing law for the loan transaction and authorized NFM to transfer it, stating that "anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the 'Note Holder.'" Section 19 of the deed of trust discussed the possibility of the note being sold in the future as well. It provided that if two different entities obtained interests in the note by

purchasing it or acquiring servicing rights to it, the successor loan servicer would remain responsible for carrying out the original servicing obligations under the note:

> **Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA[1] requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

NFM indorsed the note to AmeriHome Mortgage Company, LLC ("AmeriHome") and AmeriHome notified Ms. Baxter that it would service her loan effective August 1, 2018. The notice of servicing transfer directed Ms. Baxter to list AmeriHome as her "mortgagee" on her homeowners' insurance policy. About three years later, AmeriHome transferred servicing of the loan to Central Loan Administration & Reporting ("CLAR"). Like the notice from AmeriHome, the notice of servicing transfer instructed Ms. Baxter to list CLAR as her new mortgagee. Ms. Baxter sued AmeriHome and CLAR alleging, in

---

[1] RESPA refers to the Real Estate Settlement Procedures Act codified as 12 U.S.C. § 2061 *et seq*.

relevant part, that the companies had violated CLEC by charging and collecting unauthorized convenience fees. *See Baxter v. AmeriHome Mortgage Company, LLC*, 617 F.Supp.3d 346, 349–50 (D. Md. 2022). Ms. Baxter settled her claims against both entities in 2023.

Meanwhile, loan servicing transferred to a third entity, Lakeview's sub-servicer Nationstar, effective September 2, 2021. Like the prior servicers, Nationstar directed Ms. Baxter to update her homeowners' insurance policy to list Nationstar as her new mortgagee. In its introductory letter, Nationstar offered two phone payment options: payment through an automated service for $14 and payment through a live customer service representative for $19 (the "convenience fees"). From October 15, 2021 to April 15, 2022, Nationstar charged Ms. Baxter $103.00 in convenience fees.

On April 15, 2022, Ms. Baxter sued Lakeview and Nationstar, on behalf of a class of similarly situated Maryland borrowers, for alleged violations of the Maryland Consumer Debt Collection Act and the Maryland Consumer Protection Act (Count I). Individually, she asked the court to find that CLEC governed the relationship between the parties, that Lakeview and Nationstar could only exercise the rights assigned to them, that their imposition of convenience fees violated CLEC, and that they must comply with CLEC (Count II):

> that (i) the relationship between Lakeview and [Nationstar] on the one hand and Baxter on the other hand in relation to the Baxter Loan is subject to CLEC and Lakeview and [Nationstar] were entitled to no greater rights in relation to the Baxter Loan than their assignor(s) had to give them; (ii) since October 2021 Lakeview and [Nationstar] wrongfully imposed and collected certain fees . . . from Baxter that are barred by CLEC . . . or

3

> otherwise acted in contravention of CLEC . . . and (iii) Lakeview and [Nationstar] should be Ordered to comply with CLEC . . . and not collect or attempt to collect any interest, costs, fees, or other charges with respect to Baxter Loan in violation of [CLEC] . . . .

In their answer to the complaint, Lakeview and Nationstar admitted that they "voluntarily elected to acquire the Baxter Loan." On May 16, 2022, Nationstar stopped charging convenience fees for phone payments, and the company issued refund checks to all Maryland consumers who had paid convenience fees since October 1, 2018, including Ms. Baxter.

Lakeview and Nationstar entered into a settlement agreement on Ms. Baxter's class action claims and moved for summary judgment on her declaratory judgment claim. Ms. Baxter filed a cross-motion under Maryland Rule 2-502 to separate the Count II questions for decision by the circuit court. On May 10, 2024, the court entered an order and a declaration of law, finding that (i) the loan was subject to CLEC, (ii) Lakeview and Nationstar qualified as "credit grantors" under the statute, (iii) the convenience fees were a controversy between the parties, (iv) Ms. Baxter informed Lakeview and Nationstar that the convenience fees were unauthorized charges under CLEC, (v) Lakeview and Nationstar didn't cure the error and, thus, (vi) pursuant to CLEC, Lakeview and Nationstar had forfeited the right to collect anything other than the principal of the loan. Lakeview and Nationstar noted their appeal on June 4, 2024.

## II.    DISCUSSION

Lakeview and Nationstar raise three questions on appeal,[2] which we rephrase and condense: *first*, whether the circuit court erred when it concluded that they are credit grantors under CLEC; and *second*, whether the determination that CLEC applies to the assessment of convenience fees and to a loan secured by a first lien on residential property was erroneous. We hold that the circuit court ruled correctly on both questions.

A motion to separate questions for decision asks the court to decide a discrete issue in advance of further litigation. Md. Rule 2-502; *Simpkins v. Ford Motor Credit Co.*, 389

---

[2] Lakeview and Nationstar identified the following three Questions Presented in their brief:

1. Whether a loan servicer is a "credit grantor" within the meaning of the CLEC when the servicer assumes a loan servicing function with respect to a first-priority mortgage lien instrument but the loan servicer neither originated the mortgage loan, nor acquired or obtained assignment of the mortgage loan.

2. Whether the CLEC—a statute intended to prohibit the imposition of certain additional fees at origination of a closed end extension of credit—proscribes post-origination "convenience fees" related to servicing a mortgage loan and charged by a loan servicer after the homeowner expressly agrees to pay such fees.

3. Whether a first-priority mortgage loan for the purchase of residential property is subject to the CLEC, despite the inclusion of an express provision exempting extensions of credit secured by a first lien on residential property from the statute's purview.

Ms. Baxter phrased the Questions Presented as follows:

1. Does CLEC apply to assignees and their agents? (YES)

2. May a licensed Maryland mortgage lender/service charge junk fees not expressly authorized under CLEC or any written instrument either at origination of the mortgage loan or thereafter until the loan is satisfied? (NO)

3. May Appellants raise on appeal arguments and claims or defenses it did not assert or preserve below? (NO)

Md. 426, 441–42 (2005) (citation omitted). The court's decision is a trial on the merits with regard to the issues presented. *Bender v. Schwartz*, 172 Md. App. 648, 664 (2007). Accordingly, we review the grant of a Rule 2-502 motion *de novo* to consider whether the court's conclusions were legally correct, and we defer to its factual determinations unless they are "'clearly erroneous.'" *See id.* (*quoting* Md. Rule 8-131(c)).

**A.      The Circuit Court Did Not Err When It Concluded That Lakeview And Nationstar Are Credit Grantors Under CLEC Because Lakeview and Nationstar Are Subsequent Holders Of Rights Under The Debt Instrument.**

Lakeview and Nationstar argue *first* that the circuit court erred as a matter of law when it concluded that they qualify as "credit grantors" whose actions fall within CLEC's reach. They maintain that NFM is the lender of record who extended credit to Ms. Baxter and that they merely service the loan. They admit that they obtained an assignment of servicing rights to the loan but deny that they own the note,[3] and they argue that CLEC

---

[3] Lakeview and Nationstar highlight that Ms. Baxter hasn't produced proof that they are assignees of the loan through, for example, an "assignment of mortgage that was duly recorded in the Baltimore City Land Records." In response, we note that in Maryland recordation isn't required for an assignment of a deed of trust. 63 Op. Att'y Gen. 87, 88 (Md. 1978) (The "deed of trust need not be assigned" because the promissory note is fully negotiable and, unlike a mortgage, the property is held by a third party trustee "in trust, for the benefit of and to secure the payment of the note to the lender and any subsequent bona fide holder in due course of the note."); 1 Maryland State Bar Association, *Residential Real Estate Transactions, The Lender's Role* § 5.31 (5th ed. 2024) ("many lenders prefer to use deeds of trust, because the security for a loan may be assigned by the mere endorsement and delivery of the note without the need to record an assignment among the land records . . . ."); *Billingsley v. Mitchell*, 257 Md. 301, 307 (1970) ("'The deed of trust need not and properly speaking cannot be assigned like a mortgage . . . but the note can be transferred freely, and, when transferred, carries with it the security, if any, of the deed of trust . . . .'" (*quoting Le Brun v. Prosise*, 197 Md. 466, 474 (1951))). The absence of a recorded assignment wouldn't affect whether an assignment has occurred.

would apply to them only if the latter were true.[4] Ms. Baxter claims that Lakeview and Nationstar's admissions, their statements in court, and relevant case law all support the circuit court's holding that the assignment of servicing rights brings them within CLEC's purview. We hold that Lakeview and Nationstar are credit grantors under CLEC because they hold rights and obligations under the debt instrument, in this case the note.

CLEC regulates how credit grantors offer and extend closed end credit to borrowers.[5] Md. Code (1975, 2013 Repl. Vol.), § 12-1001 *et seq.* of the Commercial Law Article ("CL"). It establishes "parameters and requirements with which credit grantors must comply" and provides "various remedies to a borrower" in the event of noncompliance. *Lyles v. Santander Consumer USA Inc.*, 478 Md. 588, 594 (2022). To determine whether the term "credit grantor" encompasses a person with servicing rights under a loan, we look first at the plain text of the statutory definition through an "ordinary, popular understanding of the English language." *See Bolling v. Bay Country Consumer Fin., Inc.*, 251 Md. App. 575, 589 (2021). CLEC provides that a credit grantor includes

---

[4] Ms. Baxter suggests that this argument isn't preserved for appellate review because Lakeview and Nationstar didn't present it to the trial court. We disagree. At the motions hearing, counsel for Lakeview and Nationstar argued expressly for a distinction between assignments of servicing rights and assignments of the note, stating "what the original lender is giving to Nationstar and Lakeview is the servicing right. So, they're not transferring to Nationstar or Lakeview the underlying contract." They have preserved the argument sufficiently. More generally, Ms. Baxter asserts that Lakeview and Nationstar have raised factual questions and legal arguments on appeal that the circuit court didn't decide which, if true, would violate Maryland Rules 8-131(a) and 8-504(a)(4). She doesn't specify how Lakeview and Nationstar violated those rules, however, and we decline to divine for ourselves what she means. Instead, we'll review each issue on its merits.

[5] Closed-end credit is the extension of credit under an arrangement that isn't a revolving credit plan. CL § 12-1001(d).

"any person who acquires or obtains the assignment of an agreement for an extension of credit made under [the statute]." CL § 12-1001(g)(2)(iii). *First*, we recognize that the words "any person" are broad in scope. "Acquire" means "to come into possession or control of often by unspecified means," Merriam-Webster's Collegiate Dictionary, (11th ed. 2025), and "obtain" is the act of gaining or attaining something "usually by planned action or effort." *Id.* Said plainly, "assignment" means "the act of assigning something" or "a specified task or amount of work assigned or undertaken as if assigned by authority." *Id.* Therefore, under a plain construction of CL § 12-1001(g)(2)(iii), a credit grantor includes any person who comes into possession or gains the assigned task or work of a CLEC agreement.

We continue by examining the statute's context, "'overall statutory scheme, and archival legislative history of relevant enactments.'" *Santander*, 478 Md. at 603 (*quoting In re: S.K.*, 466 Md. 31, 50 (2019)). The General Assembly added CLEC to the Commercial Law Article when it passed the Credit Deregulation Act of 1983 (the "Act"). 1983 Md. Laws, Chap. 143, 721–22; *Estate of Brown v. Ward*, 261 Md. App. 385, 411 (2024) (*citing Ford Motor Credit Company, LLC v. Roberson*, 420 Md. 649, 662 (2011)). The Act aimed to regulate the terms on which credit grantors could extend closed-end credit, 1983 Md. Laws, Chap. 143, 721–22, and it defined a credit grantor as any individual or entity "making a loan or other extension of credit" to a borrower. 1983 Md. Laws, Chap. 143, sec. 1, § 12-1001, 742–43. The Act established two penalties for statutory violations—a single forfeiture of interests, costs, or charges (the "single forfeiture penalty") or a treble forfeiture for knowing violations:

(A) Except for a bona fide error of computation, if a credit grantor violates any provision of this subtitle the credit grantor may collect only the principal amount of the loan and may not collect any interest, costs, or other charges with respect to the loan.

(B) In addition, a credit grantor who knowingly violates any provision of this subtitle shall forfeit to the borrower 3 times the amount of interest and charges collected in excess of that authorized by this subtitle.

1983 Md. Laws, Chap. 143, sec. 2, § 12-1018, 752. The Act gave credit grantors a chance to avoid either penalty if they corrected the error within sixty days of discovering it:

A credit grantor is not liable for any failure to comply with a provision of this subtitle if, within 60 days after discovering an error and prior to institution of an action under this subtitle or the receipt of written notice from the borrower, the credit grantor notifies the borrower of the error and makes whatever adjustments are necessary to correct the error.

*Id.* § 12-1020, 752.

In 1990, the General Assembly amended the statute to clarify "the rights of borrowers and credit grantors" should either party discover calculation errors related to the credit agreement. 1990 Md. Laws, Chap. 458, sec. 1, § 12-1001, 1880–81; *Estate of Brown*, 261 Md. App. at 413; Senate Bill 403—Revolving Credit and Closed End Credit—Corrections (1990 General Assembly) in legislative file for Senate Bill 403 at 7, 9. Specifically, the body proposed amending CL § 12-1018 to give credit grantors a "very narrow right" to cure certain CLEC violations and avoid the single forfeiture penalty. *See* Senate Bill 403—Floor Report of Revolving Credit and Closed End Credit—Corrections (1990 General Assembly) in legislative file for Senate Bill 403 at 21. As part of that effort, the General Assembly expanded the definition of "credit grantor" to include "any person

9

who acquires or obtains the assignment" of a credit agreement. *See* Senate Bill 403—Bill Analysis of Revolving Credit and Closed End Credit—Corrections (1990 General Assembly) in legislative file for Senate Bill 403 at 11. With this expansion, the legislature sought to cover "any subsequent holder of the debt instrument." *See* Senate Bill 403— Floor Report of Revolving Credit and Closed End Credit—Corrections (1990 General Assembly) in legislative file for Senate Bill 403 at 25.

From a review of this history, we know that, at minimum, the General Assembly intended to offer this remedy to later owners of the debt instrument, as evidenced by an example in its Floor Report that describes the sale of a debt instrument to an assignee. *See id.* The reference to "any subsequent holder of the debt instrument" also could mean a future noteholder who doesn't own the instrument but nevertheless can enforce it. *See* Michael J. McKeefery & Richard E. Solomon, *Gordon on Maryland Foreclosures, Noteholders* § 1 (5th ed. 2021) (the holder of a debt instrument can enforce the rights granted under it without being an owner of the instrument itself); *see id.* ("the common meaning of 'owner' in a mortgage loan context is one who is ultimately entitled to payments made under the instrument. . . . there may be intermediaries, such as loan servicers . . . who may be entitled to a share of the payments, in compensation for services provided to the investor, but, if there is a separate servicer, they are not considered an 'owner.'"); CL § 3-301 ("A person may be entitled to enforce the instrument even though the person is not the owner of the instrument or is in wrongful possession of the instrument."). Further, "subsequent holders of the debt instrument" could reach others entitled to act under the agreement. *See id.* ("'Person entitled to enforce' an instrument

10

[includes] . . . (ii) a nonholder in possession of the instrument who has the right of a holder"); *cf. Nationstar Mortgage LLC v. Kemp*, 476 Md. 149, 188 (2021) (purchaser of note, as assignee, and loan servicer, as assignee's agent, were "lenders" subject to Usury Law proscription of property inspection fees even though statutory definition did not include "assignees" explicitly).

Next, we look for additional evidence of intent in the legislature's statements about the policy problem it was trying to solve in 1990, *see B.F. Saul Company v. West End Park North, Inc.*, 250 Md. 707, 720 (1968) ("[i]n order to divine the legislative intent behind [a statutory provision] it is necessary to consider the primary objective sought to be achieved by the [legislative act] . . . ."), and from that we learn that the General Assembly had certain CLEC requirements in mind when it fashioned this cure remedy:

> **Background**. Currently, under the Credit Deregulation Act, a credit grantor is subject to forfeiture of interest, costs, or other charges if the credit grantor violates the Credit Deregulation Act; this <u>penalty does not apply in </u>cases of <u>bona fide errors of computation</u>. A knowing violation by a credit grantor could result in a penalty of 3 times the interest, costs, and other charges.
>
> Currently, a credit grantor is not liable for damages for <u>any</u> violation of the Credit Deregulation Act if the credit grantor notifies the borrower of the error and cures the error:
>
> 1) Within 60 days after discovering the error; <u>and</u>
> 2) Prior to the institution of a suit by the borrower or notice of the error by the borrower to the credit grantor.
>
> In other words, under the current law, the credit grantor has an affirmative duty to discover an error <u>before</u> the borrower notifies the credit grantor, whether through a written letter or through the institution of a lawsuit. []

> Under the amended bill, a credit grantor that violates a provision related to interest rates and fees is not subject to the [single forfeiture penalty] if: 1) The <u>violation was unintentional and in good faith</u>; 2) <u>Within 10 days after</u> the credit grantor receives <u>notice</u> of the error or violation the credit grantor: a) <u>corrects</u> the error or violation; <u>and</u> b) <u>makes the borrower whole for all losses</u>, including reasonable attorney's fees and interest, where appropriate.

> The credit grantor's right to "cure" only applies to unintentional and good faith violations of the following provisions: 1) Interest rate limits, calculation of interest, and balloon payment prohibition [§ 12-1003]; 2) Variation in periodic interest rate [§ 12-1004]; 3) Fees and charges [§ 12-1005]; 4) Charges for default or delinquency [§ 12-1008]; or 5) Attorney's fees and court or other collection costs [§ 12-1011].

Senate Bill 403—Bill Analysis and Floor Report of Revolving Credit and Closed End Credit—Corrections (1990 General Assembly) in legislative file for Senate Bill 403 at 11, 13, 15. This history illustrates the General Assembly's intent to afford cure rights to the lender or any person who comes to hold the authority to take the actions in CL §§ 12-1003, 12-1004, 12-1005, 12-1008, or 12-1011.

For instance, the General Assembly created a right to cure unintentional violations of CL § 12-1003, a provision that permits credit grantors to charge and collect interest on a loan subject to the terms of the debt instrument so long as the "effective rate of simple interest" doesn't exceed twenty-four percent per year. CL § 12-1003(a). Additionally, CL § 12-1003 authorizes credit grantors to calculate interest "by way of simple interest" or by any other method permitted under the debt instrument, or to precompute the interest amount. CL § 12-1003(b). Through Senate Bill 403, the General Assembly wanted any

person having the authority to charge, collect, or compute the interest due on a loan—whether an original lender or a subsequent holder—to have the chance to cure a violation within ten days of being placed on notice of the error.

Commercial Law Article § 12-1008 is another requirement tagged by the General Assembly for this cure opportunity. That provision authorizes credit grantors to impose a "late or delinquency charge on payment or portions of payments" and limit any fees to fifteen dollars or less if a check payment is dishonored, provided that the debt instrument so allows. CL § 12-1008(a). The General Assembly granted cure rights for violations of a credit grantor's obligation to charge and collect a variable periodic percentage rate of interest (CL § 12-1004), additional fees (CL § 12-1005), and collection costs (CL § 12-1011) in accordance with the statute and the debt instrument. The legislature's effort to provide a cure for these violations is meaningful only to persons in a position to take those actions, whether at the time of loan origination or after the authority to act has been assigned. Loan servicers like Lakeview and Nationstar fall into the latter group.

It is undisputed that Lakeview and Nationstar are subsequent holders of rights under the loan because they received an assignment of servicing rights to the loan.[6] Nationstar,

---

[6] This fact stands whether Lakeview and Nationstar hold these rights on their own or as agents of the assignee who purchased the note. Both claim that the loan was securitized into an investment trust that acquired the note and hired Lakeview and Nationstar as master servicer and sub-servicer of the loan, although there is no documentation of this claim in the record. In fact, the only indorsement in the record before us is from NFM to AmeriHome. Even so, Lakeview and Nationstar concede that the trust legitimately qualifies as a credit grantor under CLEC. If the investment trust now owns the loan through assignment, and if the trust hired Lakeview and Nationstar to service it, then Lakeview and

Continued . . .

13

as sub-servicer, collects payments on loans, issues monthly statements that identify all fees and charges it has collected and imposed on borrowers' mortgage accounts since the last periodic statement, and communicates directly with borrowers. Nationstar charges late fees and applies borrower payments to principal and interest, escrow amounts, and fees and other assessed charges based on a "predetermined sequence." Nationstar directs borrowers to change the mortgagee clause on their homeowners' insurance premiums to list it as the "mortgagee." And it performs escrow analyses on loans and has the authority to adjust the monthly loan payment amount to match. The record supports the finding that Lakeview and Nationstar possess authority to act under CL §§ 12-1003 and 12-1008.

We see no reasonable basis on which to conclude that Lakeview and Nationstar hold rights to act on the loan but lack the obligations that come with that authority, especially obligations that flowed with that authority at its inception. *Cf. Kemp*, 476 Md. at 163, 172, 187–88 (rejecting loan servicer's position that its principal could act as "lender" in charging inspection fees under deed of trust but not be a "lender" subject to its restrictions on imposing those fees). Nor do they explain who would be responsible for violating provisions like CL §§ 12-1003 and 12-1008 if not them. *See* section 19 of deed of trust above ("If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer . . . .").

---

Nationstar are servicing the loan on behalf of the investment trust, making them agents of the assignee. *Cf. Kemp*, 476 Md. at 188.

Lakeview and Nationstar are subsequent holders of rights and obligations under a note governed by CLEC. This conclusion squares with the legislative intent that assignees avert unforgiving penalties for unintentional errors committed by them or their assignor, and it finds support in the undisputed facts of record. Moreover, CLEC is a remedial statute that we construe liberally to effectuate its broad remedial purpose, *Bolling*, 251 Md. App. at 609 (*citing Cathey v. Bd. of Rev., Dept. of Health and Mental Hygiene*, 422 Md. 597, 605 (2011)), and that construction would be difficult to accomplish if we were to accept the proposition that an assignee of servicing rights is exempt from the statutory requirements.

*First*, that would seem to place Lakeview and Nationstar in a more favorable legal position than their assignors, an outcome that would be inconsistent with the established principle that an assignee inherits the same rights and responsibilities as their assignor. *See Lyles v. Santander Consumer USA Inc.*, 263 Md. App. 583, 608 (2024) (citation omitted), *cert. granted*, 490 Md. 81 (2025); *Kemp*, 476 Md. at 156. The parties do not dispute that NFM and Ms. Baxter elected CLEC to govern the loan and that NFM was subject to the statute. Because the original holder of servicing rights to the loan was subject to CLEC, Lakeview and Nationstar fall within its purview as well. *Cf. Patton v. Wells Fargo Fin. Md., Inc.*, 437 Md. 83, 114 (2014) (By accepting assignment of a contract that elected to be governed by CLEC, assignee "expressly agreed to be governed by CLEC in the exercise of its rights under the contract."). *Second*, embracing Lakeview and Nationstar's position would mean that statutory violations would go unchecked and borrowers' protections from unwarranted interest charges, fees, and other collection costs would evaporate as soon as a

15

credit grantor transferred any of its loan responsibilities to a third party. We doubt that the General Assembly intended to invite this outcome. *See Kemp*, 476 Md. at 170 ("It is important to consider the consequences of alternative interpretations of the statute, in order to avoid constructions that are 'illogical or nonsensical, or that render a statute meaningless'" (*quoting Couret-Rios v. Fire & Police Emps. Ret. Sys.*, 468 Md. 508, 528 (2020))); *B.F. Saul Company*, 250 Md. at 722 (Courts should endeavor to construe statutes in a way that avoids "oppressive, absurd, or unjust consequences"); *Estate of Brown*, 261 Md. App. at 422 ("The General Assembly is no doubt aware that loans and mortgages are frequently assigned from their original lenders to third parties. Thus, we see no obvious reason why the General Assembly would abandon all concern about the fitness of the credit grantor as soon as the plan is assigned."). In light of the undisputed facts in this record, we hold that the circuit court's conclusion that Lakeview and Nationstar are credit grantors under CLEC was correct legally.

**B.      CLEC Applies To Nationstar's Convenience Fees And To Ms. Baxter's Loan Because CLEC Regulates The Grantor-Borrower Relationship And The Fee Limitations In CL § 12-1005(d) Apply To The Loan Regardless Of The Partial Exemption In CL § 12-1005(a)(3)**

Lakeview and Nationstar argue *next* that CLEC doesn't apply to Nationstar's convenience fees because Nationstar assessed them after the loan originated. They contend that CLEC seeks to regulate fees imposed at loan origination and that CL §§ 12-1002 and 12-1005 support their interpretation. As a result, they assert that Nationstar's convenience fees fall beyond CLEC's reach because they were not assessed when NFM extended credit to Ms. Baxter. Ms. Baxter counters that CLEC applies throughout the entire loan period

and bars the imposition of any fee not agreed in writing between the borrower and the original lender. We hold that CLEC prohibits credit grantors from assessing unauthorized fees at any point during the life of the loan.

Any credit grantor may "offer and extend closed end credit to a borrower," and in connection with the loan, "may charge and collect the interest and other charges permitted by [CLEC] and may take any security as collateral . . . ." CL § 12-1002. Generally, they may charge and collect "loan fees, points, finder's fees, and other charges," so long as the sum of the charges do not exceed ten percent of the loan amount. CL § 12-1005(a)(1). Additionally, CL § 12-1005 allows credit grantors to charge and collect reasonable service fees or reimbursements for expenses incurred:

> In addition to interest at a periodic percentage fate or rates permitted by §§ 12-1003 and 12-1004 of this subtitle, a credit grantor may charge and collect:
>
> * * *
>
> (b) *Service fees.* — Reasonable fees for services rendered or for reimbursement of expenses incurred in good faith by the credit grantor or its agents in connection with the loan, including:
>
> (1) Commitment fees;
>
> (2) Official fees and taxes;
>
> (3) Premiums or other charges for any guarantee or insurance protecting the credit grantor against the borrower's default or other credit loss;
>
> (4) Costs incurred by reason of examination of title, inspection, recording, and other formal acts necessary or appropriate to the security of the loan;
>
> (5) Filing fees;

(6) Attorney's fees; and

(7) Travel expenses.

CL § 12-1005(b). Within this category, credit grantors can only assess four types of service

fees and expense reimbursement charges to consumer borrowers like Ms. Baxter:

> [*Loans to consumer borrowers.* —] (1) in the case of a loan to
> a consumer borrower, a fee permitted under [CL § 12-1005(b)]
> may not be charged and collected unless:
>
> (i) The agreement, note, or other evidence of the loan permits;
>
> (ii) The fee is an actual and verifiable expense of the credit
> grantor not retained by him; and
>
> (iii) Limited to charges for:
>
> 1. Attorney's fees for services rendered in connection with the
>    preparation, closing, or disbursement of the loan;
> 2. Any expense, tax, or charge paid to a governmental agency;
> 3. Examination of title, appraisal, or other costs necessary or
>    appropriate to the security of the loan; and
> 4. Premiums for any insurance coverage permitted under this
>    subtitle.
>
> (2) Notwithstanding [the prohibition on prepayment charges],
> fees and charges permitted under this subsection may be
> imposed, charged, and collected at any time.

CL § 12-1005(d). CLEC allows credit grantors to impose, charge, and collect these limited

charges "at any time." CL § 12-1005(d)(2). Additionally, the statute permits credit grantors

to charge delinquent or late fees, CL § 12-1008(a), subject to certain limitations for

consumer borrowers. *Id.* § 12-1008(b) ("In the case of a loan to a consumer borrower, no

late or delinquency charge may be charged unless the agreement, note or other evidence of

the loan permits. No more than 1 late or delinquency charge may be imposed for any single

payment or portion of payment . . . ."). CLEC prohibits credit grantors from charging inspection fees on loans to consumer borrowers that are secured by a lien in residential real property unless certain exceptions apply. CL § 12-1027. And if a credit grantor knowingly violates the statute, they must pay the borrower "3 times the amount of interest, fees, and charges collected in excess of that authorized by" the statute. CL § 12-1018(b).

Together, these provisions define the universe of fees and charges that a credit grantor can assess relative to a loan made under CLEC. Lakeview and Nationstar's focus on the timing of the fee assessment is a distinction without a difference because any fee outside the statutory scope of permissible practices is unauthorized anyway. *See* Senate Bill 347—Fiscal and Policy Note Credit Regulation—Credit Grantor Provisions—Fees, Charges, and Penalties (2008 General Assembly) in legislative file for Senate Bill 347 at 11 ("Credit grantors of open-and closed-ended credit plans may not impose fees or charges on a consumer borrower in addition to the interest or finance charges permitted by statute, with some specific exceptions" like, for example, the expenses listed in CL § 12-1005(b)(1)–(7)); *Santander*, 478 Md. at 603 (the amount that is trebled when calculating the penalty for knowing violations "are those amounts collected that are not authorized under CLEC."). In other words, even if CLEC only gives credit grantors the authority to charge and collect loan origination fees, that still means that Lakeview and Nationstar assessed a post-origination fee beyond what the statute authorizes.

The fee restrictions in CL § 12-1005 continue throughout the life of the loan because CLEC, at its inception and to this day, regulates a relationship between the credit grantor and the borrower that isn't confined to one moment in time. To the contrary, the statute

regulates the credit grantor's conduct until the loan is satisfied. *See generally* CL §§ 12-1003, 12-1004, 12-1005, 12-1008, 12-1011, 12-1027. From our review of the statutory scheme, CLEC endeavors to protect consumer borrowers by ensuring that they know what fees and charges they will have to pay upfront and what fees they might have to pay later. *See e.g.* CL §§ 12-1005(a)(2) (special conditions for charging consumer borrowers loan fees, points, and finder's fees), 12-1005(d) (special limitations for the kinds of expense reimbursement charges that may be assessed on consumer borrowers), 12-1008(b) (special restrictions on delinquency fee charges for consumer borrowers). Further, the statute binds a credit grantor's practices to the terms of the underlying loan agreement consistently throughout its provisions. *See id.* Moreover, Lakeview and Nationstar haven't pointed to (and can't point to) any source of authority under CLEC or the note that supports the assessment of convenience fees.

*Lastly*, Lakeview and Nationstar argue that the circuit court erred in concluding that CLEC applied to the loan. They maintain that the loan is an extension of credit secured by a first lien on a residential property and that CLEC exempts those kinds of credit extension agreements from its fee limitations. In response, Ms. Baxter points to CL § 12-1005(d), a provision that allows credit grantors to charge and collect fees from consumer borrowers if the loan agreement so permits. We agree that CLEC, through CL § 12-1005(d), applies to the loan.

As stated above, credit grantors can impose "loan fees, points, finder's fees, and other charges" so long as they don't exceed ten percent of the original loan amount. CL § 12-1005(a)(1). Generally, credit grantors can't assess these fees on consumer borrowers

20

unless they have secured the loan with a lien on residential real property. CL § 12-1005(a)(2)(ii). If that's the case, a credit grantor can charge a consumer borrower "loan fees, points, finder's fees, and other charges," but only if they disclose the charges in accordance with the federal Truth in Lending Act, if the charges are a term of the credit agreement, and if the borrower agrees to pay them in writing. CL § 12-1005(a)(2)(i), (iii). The statute exempts a credit grantor from complying with these restrictions if the loan is secured by a first lien on residential real property. CL § 12-1005(a)(3)(i).

It is undisputed that the loan in this case falls into that category. Even so, Lakeview and Nationstar's argument fails. CLEC exempts first liens on residential real property from the fee limits in CL § 12-1005(a)(1) and (a)(2). CL § 12-1005(a)(3). But it doesn't relieve Lakeview or Nationstar of the fee limitations mandated by CL § 12-1005(b) and (d), which cover service fees, expense reimbursement charges, and loans to consumer borrowers. The parties don't dispute that Ms. Baxter is a consumer borrower under CLEC. Accordingly, the fee limitations for consumer borrowers in CL § 12-1005(d) still apply to the loan and define the extent of the additional fees and charges that Lakeview and Nationstar can assess in connection with the loan. On the undisputed facts of this case, we hold that CLEC applies to the controverted convenience fees and to the loan, and the circuit court's conclusion to that effect was correct legally.

> **JUDGMENT OF THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY AFFIRMED. APPELLANT TO PAY COSTS.**